J-S36035-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DONELL REESE BARBER | : | |
| | : | |
| Appellant | : | No. 162 MDA 2019 |

Appeal from the Judgment of Sentence Entered August 1, 2018
In the Court of Common Pleas of Lebanon County Criminal Division at
No(s):  CP-38-CR-0001578-2017

BEFORE:  PANELLA, P.J., SHOGAN, J., and PELLEGRINI*, J.

MEMORANDUM BY PELLEGRINI, J.:                **FILED AUGUST 16, 2019**

Donell Reese Barber (Barber) appeals from the aggregate judgment of sentence of 21 to 60 years' imprisonment imposed by the Court of Common Pleas of Lebanon County (trial court) after a jury convicted him of, among other offenses, Attempted Murder and Aggravated Assault.  We affirm.

**I.**

On June 19, 2017, Francis Leon left work and walked toward a car he thought was driven by Latoya Hines whom he had messaged for a ride.  But when Leon reached the car, Hines's boyfriend, Barber, got out and said, "I'm Latoya's man."  Leon replied he did not know him.  Barber then pulled out a handgun and fired at Leon.  The first shot missed.  Leon sprinted away as Barber fired seven more rounds at him.  One of the bullets struck Terry Hitz, a bystander, in the face.  Hitz was rushed to a hospital and survived.

_____
*   Retired Senior Judge assigned to the Superior Court.

The police recovered eight .45 caliber shell casings with Perfecta brand headstamps. Surveillance footage showed that Barber drove a Nissan SUV with out-of-state plates and a missing rear hubcap. The next day, a source told the police that Barber was the shooter. Based on this tip, the police checked state driving records and discovered that Barber and Hines lived at the same address. The police went to the address and saw parked in front a Nissan SUV with Connecticut license plates and a missing rear hubcap. Upon running the car's plates, the police learned that it was a rental car rented to Barber. Based on this information, the police had Leon look at a photo array and he identified Barber as the shooter. A warrant for Barber's arrest was issued and on-duty officers were given a description of Barber's car.

The next morning, a police officer pulled over the rental car with Barber driving and Hines a passenger. The officer arrested Barber and took Hines in for questioning. During her interview, Hines gave consent to the police to search her home. In an upstairs bedroom, the police found a .45 caliber handgun containing a Perfecta brand bullet. A firearm expert with the Pennsylvania State Police later confirmed that the handgun discharged the eight spent shell casings recovered at the shooting.

After obtaining a search warrant, the police also searched Barber's rental car and found Hines's cell phone. A digital forensic analysis revealed that the phone contained past messages between Leon and Hines but none from the night of the shooting, indicating that someone had deleted them.

Barber filed a motion to suppress this evidence along with the handgun found at Hines's home. After a suppression hearing, the trial court denied the motion.

Barber proceeded to a two-day jury trial and was convicted of Attempted Murder; Aggravated Assault (two counts); Persons Not to Possess Firearms; Discharge of a Firearm into an Occupied Structure; and Reckless Endangering Another Person (two counts).[1] Barber was sentenced to serve an aggregate term of 21 to 60 years' imprisonment.[2] After the denial of post-sentence

---

[1] 18 Pa.C.S. §§ 901(a), 2702(a), 6105(a)(1), 2707.1(a), and 2705, respectively. The jury determined that Barber used a deadly weapon on the Attempted Murder, Aggravated Assault and Recklessly Endangering Another Person counts, and that Hitz suffered serious bodily injury on the Aggravated Assault count to which he was the victim.

[2] The trial court imposed a sentence of 15 to 40 years for Attempted Murder and a consecutive 6 to 20 years for Aggravated Assault against Hitz; the remaining sentences either merged or were concurrent. The statutory maximum for Attempted Murder was apparently enhanced under 18 Pa.C.S. § 1102(c) based on Hitz suffering serious bodily injury. This Court has explained that "[s]ection 1102(c) 'imposes a condition precedent to the imposition of a maximum term of imprisonment of up to 40 years, specifically, that 'serious bodily injury' must have resulted from the attempted murder. Otherwise, the sentence shall be not more than 20 years.'" ***Commonwealth v. Barnes***, 167 A.3d 110, 117 (Pa. Super. 2017) (*en banc*) (quoting ***Commonwealth v. Johnson***, 910 A.2d 60, 66 (Pa. Super. 2006)). Barber did not challenge the imposition of the enhanced statutory maximum for Attempted Murder.

J-S36035-19

motions, Barber filed this appeal and now raises eight issues that we have reordered for ease of discussion.[3]

## II.

First, Barber contends the Commonwealth presented insufficient evidence to make out the crimes of (1) Attempted Murder; (2) Aggravated Assault (both counts); and (3) Persons Not to Possess Firearms.[4] We will address them in order.

_____

[3] Barber timely filed his post-sentence motion on August 9, 2018. The trial court did not decide on the post-sentence motion within the 120-day decision period and never granted an extension of decision under Pa.R.Crim.P. 720(B)(3)(b). As a result, Barber's post-sentence motion should have been denied by operation of law at the expiration of the 120-day period for decision on December 7, 2018. **See** Pa.R.Crim.P. 720(B)(3)(a). However, the clerk of courts failed to enter such an order as required by Pa.R.Crim.P. 720(B)(3)(c). Rather, the trial court entered an order on January 3, 2019, denying the post-sentence motion and informing Barber that he had 30 days to file a notice of appeal, which he did on January 23, 2019. Where a trial court does not comply with Rule 720, we have deemed such circumstances to constitute an administrative breakdown in the court system so as to excuse the untimely filing of a notice of appeal. **See Commonwealth v. Patterson**, 940 A.2d 493, 498-99 (Pa. Super. 2007). Here, the clerk of courts failed to enter an order denying the post-sentence motion by operation of law. The trial court then compounded this error by entering an order denying the post-sentence motion and incorrectly informing Barber that he had 30 days to appeal when, in fact, he would have had only four days left. Under these circumstances, we decline to quash Barber's appeal.

[4] Our standard of review for sufficiency claims is as follows:

The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh

- 4 -

**A.**

In challenging his Attempted Murder conviction, Barber argues the Commonwealth failed to establish that he committed an act constituting a substantial step toward killing Leon. He contends that the shots fired at Leon "all missed by design" because none of them struck him.

We have described the elements needed to establish Attempted Murder as:

> [u]nder the Crimes Code, "[a] person commits an attempt when with intent to commit a specific crime, he does any act which constitutes a substantial step towards the commission of the crime." 18 Pa.C.S. § 901(a). A person may be convicted of attempted murder if he takes a substantial step toward the commission of a killing, with the specific intent in mind to commit such an act. *See* Pa.C.S. §§ 901, 2502. The substantial step test broadens the scope of attempt liability by concentrating on the acts the defendant has done and does not any longer focus on the acts remaining to be done before the actual commission of the crime. The *mens rea* required for first-degree murder, specific intent to kill, may be established solely from circumstantial

> the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered.

***Commonwealth v. Tucker***, 143 A.3d 955, 964 (Pa. Super. 2016) (brackets and citation omitted).

evidence. [T]he law permits the fact finder to infer that one intends the natural and probable cause of his acts.

***Commonwealth v. Ligon***, 206 A.3d 515, 519 (Pa. Super. 2019) (quotation and most internal citations omitted).

The Commonwealth's evidence, viewed in the light most favorable to it as the verdict winner, established that Barber took a substantial step toward attempting to kill Leon. The jury could conclude, as it did, that Barber's firing a gun at Leon from point blank range and then seven more times evinced an intent to kill. ***See Commonwealth v. Hall***, 830 A.2d 537, 543 (Pa. 2003) ("[a] gun is a lethal weapon; pointing it toward a person, and then discharging it, speaks volumes as to one's intention."). Moreover, the Commonwealth established Barber's motive to kill based on his belief that Leon was in a relationship with his girlfriend. That Barber failed to accomplish his intention cannot, as he now tries to do, be credibly argued as evidence that he did not intend to kill Leon. Barber's challenge to his conviction for Attempted Murder is without merit.[5]

---

[5] Barber also adds a weight of the evidence claim to his sufficiency argument for Attempted Murder. Besides this argument being woefully underdeveloped, the trial court did not abuse its discretion in denying Barber's post-sentence motion for a new trial based on the weight of the evidence, as the evidence was not so tenuous, vague and uncertain that the verdict shocks the conscience of the court.

**B.**

Next, Barbers avers that there was insufficient evidence for the two counts of Aggravated Assault. A person is guilty of Aggravated Assault if he "attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly, or recklessly, under circumstances manifesting extreme indifference to the value of human life." 18 Pa.C.S. § 2702(a)(1). Barber was convicted under both theories: one count for attempting to cause serious bodily injury to Leon and the second for actually causing serious bodily injury to Hitz.

We readily dispose of Barber's challenge to Aggravated Assault for Leon, as this argument simply rehashes his "missed by design" theory. Aggravated Assault under these circumstances is a lesser-included offense of Attempted Murder; the intent to kill Leon necessarily includes the intent to cause serious bodily injury. *See Commonwealth v. Dale*, 836 A.2d 150, 154 (Pa. Super. 2003) ("The conviction for aggravated assault, being a lesser included offense, is supported by the same facts which support Dale's conviction for attempted murder, since the elements of aggravated assault are necessarily included in the offense of attempted murder and merge with it for sentencing purposes."). His challenge then to the Aggravated Assault of Leon fails for the same reasons outlined above for Attempted Murder.

Barber next argues there was insufficient evidence for the jury to find him guilty of Aggravated Assault of Hitz. He first contends there was

insufficient evidence to establish that Hitz suffered a serious bodily injury needed to make out this charge. "Serious bodily injury" is statutorily defined as "[b]odily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member." 18 Pa.C.S. § 2301. Hitz testified at trial about being shot in the face. Because of the gunshot, his face was swollen and he could not open his eye for several days after the shooting. Hitz's doctors ultimately decided that they could not safely remove the bullet because doing so could result in death. As a result, when Hitz testified at the trial, the bullet was still lodged in his face. This was sufficient, at the very least, to prove that Barber caused serious, permanent disfigurement or protracted loss or impairment.

Barber also claims there was insufficient evidence to establish that he intended to cause serious bodily injury to Hitz. However, when a victim suffers serious bodily injury, the Commonwealth does not need to prove specific intent to cause such harm. *See Commonwealth v. Burton*, 2 A.3d 598, 602 (Pa. Super. 2010). Under 18 Pa.C.S. § 2702(a)(1), the *mens rea* for Aggravated Assault can be established if the Commonwealth proves that the defendant recklessly causes such an injury "under circumstances manifesting extreme indifference to the value of human life."

Hitz testified that about 20 people left at the same time when work ended. Consequently, when Barber confronted Leon, other people were in the

parking lot. Despite this being the case, Barber fired at Leon as he ran past occupied cars, risking that another person would be hit, which is exactly what happened. *See Commonwealth v. Daniels*, 354 A.2d 538 (Pa. 1976) (finding sufficient evidence of recklessness to convict for aggravated assault where defendant fired gun in a crowded bar full of people). Viewing the evidence in the light most favorable to the Commonwealth as the verdict winner, there was sufficient evidence that Barber acted recklessly under circumstances manifesting extreme indifference to the value of human life.[6]

**C.**

Barber's final sufficiency challenge attacks his conviction for Persons Not to Possess a Firearm. Barber stipulated at trial that he was disqualified from possessing a firearm but disputed that the Commonwealth established possession. Barber emphasizes that the police never recovered a firearm either on his person or in the rental car, nor did the Commonwealth present any fingerprint or DNA evidence linking him to the handgun found at Hines's home.

---

[6] Because there was sufficient evidence that Barber recklessly caused serious bodily injury, we need not address whether there was sufficient evidence to convict based on the doctrine of transferred intent under 18 Pa.C.S. § 303(b). Barber contends that the trial court erred in giving the jury a transferred intent instruction as part of its Aggravated Assault charge. However, Barber did not object to the trial court's instruction before the jury retired to deliberate and this claim is waived. *See Commonwealth v. Houck*, 102 A.3d 443, 451 (Pa. Super. 2014) (citation omitted); *see also* Pa.R.A.P. 302(b).

Plainly, the evidence sufficiently established that Barber was the shooter as Leon identified Barber as the man who shot at him and eyewitness testimony is sufficient. **See Commonwealth v. Galindes**, 786 A.2d 1004 (Pa. Super. 2001) (evidence sufficient where witness did not see defendant possess firearm but saw accompanying flashes and heard gunshot sounds in witnessing crime). Barber's argument is, therefore, one of mistaken identity and actually goes to weight, as he claims the testimony was inconsistent and contradictory. However, under sufficiency review, we view the evidence in the light most favorable to the Commonwealth as the verdict winner.[7]

## III.

Barber's next two claims challenge the trial court's denial of his motion to suppress. Barber sought to suppress (1) the recovery of Hines's cell phone from the rental car on the grounds that the police lacked reasonable suspicion to initially stop his vehicle and (2) the handgun seized from Hines's home pursuant to her consent, which Barber contends was coerced.[8]

---

[7] We also note that the Commonwealth presented circumstantial evidence linking Barber to the handgun used in the shooting in that the gun discovered at Hines's home contained the same brand of ammunition that the police recovered at the shooting.

[8] "Our standard of review in addressing a challenge to a trial court's denial of a suppression motion is limited to determining whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct." **Commonwealth v. Jones**, 874 A.2d 108, 115 (Pa. Super. 2005) (citation omitted).

- 10 -

**A.**

As to the vehicular stop that led to the recovery of Hines's cell phone, Barber claims that the police officer lacked reasonable suspicion of any criminal activity to justify pulling over his car. But this argument mischaracterizes the nature of the interaction as the police stopped Barber to arrest him on the active warrant.

At the suppression hearing, the arresting officer testified that when he spotted the rental car, he was aware there was a warrant for Barber's arrest for the shooting. Moreover, the officer had been provided with a description of Barber's rental car. Based on this description, the officer followed the car and confirmed that its registration matched the information he had been given. Lastly, while the arresting officer was following Barber, another on-duty officer saw the car and visually confirmed that Barber was, in fact, the driver. *See* N.T., 1/31/18, at 3-6.

The purpose of the vehicle stop was to take Barber into custody on the arrest warrant—not to stop the car for further investigation as Barber tries to claim. As the suppression court found, the arresting officer had probable cause to stop the car based on it matching the description that the police had provided to its officers, as well as the other officer confirming that Barber was driving. Based on the suppression court's factual findings, we conclude that it correctly denied the motion to suppress based on the vehicle stop.

**B.**

Barber also challenges the denial of his motion to suppress the handgun recovered from Hines's home. According to Barber, this was an unreasonable search because (1) Hines lacked apparent authority to consent to the search and (2) her consent was involuntary.

"A warrantless search or seizure is *per se* unreasonable unless it falls within a specifically enumerated exception." **Commonwealth v. Wright**, 961 A.2d 119, 137 (Pa. 2008). Third-party consent, whether based on common or apparent authority, is an exception to the warrant requirement. **Commonwealth v. Strader**, 931 A.2d 630, 634 (Pa. 2007).

> In general, the common authority doctrine permits a third-party possessing common authority over a premise to give valid consent to search against a non-consenting person who shares authority because "it is reasonable to recognize that any of the co-inhabitants has the right to permit the inspection in his own right and that the others have assumed the risk that one of their number might permit the common area to be searched." **United States v. Matlock**, 415 U.S. 164, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974). The apparent authority doctrine allows a third-party to consent to a search, even if the third-party does not have common authority over a premise, where an officer reasonably believes, based upon the facts then available, that the consenting third-party had the authority to consent. **Illinois v. Rodriguez**, 497 U.S. 177, 188–89, 110 S.Ct. 2793, 111 L.Ed.2d 148 (1990).

**Commonwealth v. Basking**, 970 A.2d 1181, 1184 n.1 (Pa. Super. 2009).

The evidence at the suppression hearing was that Hines was Barber's girlfriend and that they both lived in the same house. **See** N.T., 1/31/18, at 12-14. Barber called Hines as a witness at the hearing but focused on the issue of her consent to the search. He developed no testimony that her

authority, as an owner and co-habitant, was limited in any way. In the absence of any testimony to the contrary, the suppression court did not err in concluding that she had authority to consent to the search. **See Commonwealth v. Simmen**, 58 A.3d 811, 817 (Pa. Super. 2012) (finding warrantless entry of home was permissible under common authority exception where wife consented to the police officer's entry).[9]

Next, Barber argues that Hines did not voluntarily consent to the search of her home. The Commonwealth bears the burden of proving "that a consent is the product of an essentially free and unconstrained choice—not the result of duress or coercion, express or implied, or a will overborne—under the totality of the circumstances." **Commonwealth v. Powell**, 994 A.2d 1096, 1101-02 (Pa. Super. 2010) (quoting **Commonwealth v. Kemp**, 961 A.2d 1247, 1261 (Pa. Super. 2008)). "While knowledge of the right to refuse to consent to the search is a factor to be taken into account, the Commonwealth is not required to demonstrate such knowledge as a prerequisite to establishing a voluntary consent." **Id**. (quoting **Kemp**, 961 A.2d at 1261). In

_____

[9] In his argument, Barber largely relies on facts adduced at trial. Specifically, he emphasizes that he was not living at the house at the time of the search and that the police found the handgun in the bedroom of Hines's 14-year-old son. **See** Barber's Br. at 21-22. However, when reviewing the denial of a suppression motion, we may not look beyond the suppression record. **See Commonwealth v. Smith**, 164 A.3d 1255, 1257 (Pa. Super. 2017) (citation omitted).

assessing the voluntariness of consent, this Court has set forth several factors:

> 1) the presence or absence of police excesses; 2) whether there was physical contact; 3) whether police directed the citizen's movements; 4) police demeanor and manner of expression; 5) the location of the interdiction; 6) the content of the questions and statements; 7) the existence and character of the initial investigative detention, including its degree of coerciveness; 8) whether the person has been told that he is free to leave; and 9) whether the citizen has been informed that he is not required to consent to the search

*Id*. (quoting *Kemp*, 961 A.2d at 1261).

At the suppression hearing, the evidence established that the police removed Hines from Barber's rental car and briefly put her in handcuffs. However, the police removed the handcuffs before taking her to the station. At the station, she waited in a squad room for a detective. When he arrived, Hines was taken to an interview room. The detective told Hines she was not under arrest but never said she was free to leave. While asking for permission to search Hines's home, the detective informed her that she could refuse but that doing so would result in them seeking a search warrant. While being recorded, Hines consented to the search, later explaining that she agreed because she needed to go to work and felt that if she did not give consent, then the police would continue to hold her. *See* N.T., 1/31/18, at 28, 32.

At the suppression hearing, the court addressed the voluntariness of Hines's consent:

> For a brief period of time she had handcuffs on, but they were removed. She was taken to the stationhouse for questioning. She

- 14 -

agreed to do that. She never raised any issues. As a matter of fact on the tape it is clear that [the detective] numerous times informed her that she doesn't have to consent to this search; you can get a search warrant. But she decides that because she doesn't want to wait for a search warrant, she'll consent. There was no undue pressure, no undue coercion, nothing that would even rise to that. This was a valid consent to search of this premises.

Therefore, the motion to suppress anything as a result of the search is denied. There was no undue coercion. There was a valid consent. She had an opportunity to refuse. She did not refuse. Even though her statement now is I felt pressure – well, because she was told that there was another way of doing it: Getting a search warrant. But they don't execute a search warrant if the co-owner is not the person in question consents to the search. She did that. There was no undue coercion.

*Id*. at 33-34.

We find that the suppression court did not err in finding that based on the totality of the circumstances, Hines's consent was voluntary. While never told that she was free to leave, Hines was told she could refuse giving consent to the search of her house and that if she did refuse, then the police would obtain a search warrant. This is not a coercive police tactic but rather a truthful statement of the consequences of denying permission. *See Commonwealth v. Mack*, 796 A.2d 967 (Pa. 2000) (holding consent to search was valid when police informed suspect they would get a search warrant if suspect refused). While Hines believed that the police would continue to hold her if she did not give consent, that was her subjective belief; there was no evidence at the suppression hearing that the police ever made

such a statement to her. Accordingly, we affirm the denial of the motion to suppress.

**IV.**

Barber next contends that his right to a fair and impartial jury was violated when, during closing arguments, an unknown man motioned to one of the jurors. Barber claims that the trial court erred by failing to query the jury about any influence this man's actions may have had on them.[10]

After the court gave its instructions, defense counsel noted that the sheriffs removed someone from the courtroom during closing arguments. *See* N.T., 5/23/18, at 321. Defense counsel neither objected nor requested any further inquiry; instead, counsel just wanted to "note it on the record that this guy came in, he walked up, pointed at the jury, was removed." *Id*. at 323. The trial court noted that the man neither made contact nor provided any

_____

[10] The standard for claims of extraneous influence on a jury is well-settled:

> The relevant inquiry is whether the extraneous influence caused "a reasonable likelihood of prejudice." In making the "reasonable likelihood of prejudice" determination, the court must consider: "(1) whether the extraneous influence relates to a central issue in the case or merely involves a collateral issue; (2) whether the extraneous influence provided the jury with information they did not have before them at trial; and (3) whether the extraneous influence was emotional or inflammatory in nature." The burden is on the party claiming prejudice.

*Commonwealth v. Sneed*, 45 A.3d 1096, 1115 (Pa. Super. 2012) (internal citations and quotations omitted).

information to the jury. As a result, the court found no indication of prejudice to Barber. *See* Trial Court Opinion, 12/28/18, at 19-20.

First, defense counsel did not object or request any relief when he learned that the sheriffs removed someone from the courtroom. The claim is, therefore, waived. *See* Pa.R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal."). Moreover, the trial court immediately put on the record the circumstances of the man's removal and determined that there was no prejudice, which it is in the best position to do, and we would not disturb that judgment even if Barber preserved the claim.

## V.

Barber's final claim concerns the calculation of his prior record score at sentencing. He alleges that his sentencing guidelines were calculated using a prior record score of four when it should have been a two. A challenge involving the calculation and application of a prior record score implicates the discretionary aspects of sentencing. *See Commonwealth v. Spenny*, 128 A.3d 234, 241 (Pa. Super. 2015). "Challenges to the discretionary aspects of sentencing do not entitle an appellant to review as of right." *Commonwealth v. Allen*, 24 A.3d 1058, 1064 (Pa. Super. 2011). To invoke this Court's jurisdiction, an appellant making such a challenge must satisfy the following four-part test:

> (1) whether appellant has filed a timely notice of appeal, *see* Pa.R.A.P. 902 and 903; (2) whether the issue was properly

preserved at sentencing or in a motion to reconsider and modify sentence, *see* Pa.R.Crim.P. 720; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appeal from is not appropriate under the Sentence Code, 42 Pa.C.S.[] § 9781(b).

***Commonwealth v. Griffin***, 65 A.3d 932, 935 (Pa. Super. 2013) (citation omitted). "Objections to the discretionary aspects of a sentence are generally waived if they are not raised at the sentencing hearing or in a motion to modify the sentence imposed." ***Commonwealth v. Moury***, 992 A.2d 162, 170 (Pa. Super. 2010).

Barber failed to comply with the second part of the test by not objecting at his sentencing hearing or in his post-sentence motion.[11] The only concern Barber raised at sentencing pertained to merger; he raised no concerns about his prior record score. **See** N.T., 8/1/18, at 2-3. Barber's post-sentence motion likewise did not allege that his prior record score was miscalculated in determining his sentencing guidelines. Rather, Barber averred only that the sentencing court imposed "an illegal and/or unreasonable sentence." Therefore, Barber has not preserved this issue and it is waived.

Judgment of sentence affirmed.

---

[11] Barber has also failed to comply with the third part of the test by not including in his brief the necessary separate statement of the reasons relied upon for allowance of appeal pursuant to Pa.R.A.P. 2119(f). Nonetheless, Barber's omission is not fatal to his claim because the Commonwealth has not objected. ***See Commonwealth v. Yeomans***, 24 A.3d 1044, 1049 (Pa. Super. 2011).

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 08/16/2019