J-S45006-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| LAKHAWN HENDERSON | : | |
| | : | |
| Appellant | : | No. 1541 EDA 2019 |

Appeal from the Judgment of Sentence Entered April 16, 2019
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0009577-2017

BEFORE: BOWES, J., KUNSELMAN, J., and MURRAY, J.

MEMORANDUM BY BOWES, J.:                    **FILED DECEMBER 23, 2020**

Lakhawn Henderson appeals from the judgment of sentence of four to eight years of imprisonment imposed following his convictions for possession with intent to deliver a controlled substance ("PWID") and conspiracy to commit PWID. We affirm.

Philadelphia Police used a confidential informant to make two controlled buys of marijuana from different individuals inside the residence at 2244 N. 12th Street. Using the information thereby acquired, the police obtained a warrant to search the property. When they executed it the next day, Appellant was arrested on the front porch. The search resulted in the seizure from one of the property's bedrooms of a backpack containing marijuana, crack cocaine packaged for individual sale, other drug paraphernalia, along with Appellant's identification card, birth certificate, and other identifying documents. The documents listed an address for Appellant other than 2244 N. 12th Street.

The Commonwealth charged Appellant with PWID, conspiracy, and three other counts which were ultimately *nolle prossed*. At trial, a jury convicted Appellant of PWID and conspiracy, and the trial judge sentenced him as indicated above. Appellant filed a timely post-sentence motion, and then a timely notice of appeal after the trial court denied the motion. Both Appellant and the trial court complied with Pa.R.A.P. 1925.

Appellant presents two questions for our review:

1. Was there sufficient evidence to prove constructive possession of the drugs here to prove the crime of [PWID] beyond a reasonable doubt?

2. Did the trial court err in finding that the warrant for 2244 N. 12th Street was issued with probable cause despite its lack of details about the property and its insides?

Appellant's brief at 3 (unnecessary capitalization omitted).

The following informs our review of Appellant's claims of error. As to Appellant's sufficiency challenge, we bear in mind:

Because a determination of evidentiary sufficiency presents a question of law, our standard of review is *de novo* and our scope of review is plenary. In reviewing the sufficiency of the evidence, we must determine whether the evidence admitted at trial and all reasonable inferences drawn therefrom, viewed in the light most favorable to the Commonwealth as verdict winner, were sufficient to prove every element of the offense beyond a reasonable doubt. [T]he facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. It is within the province of the fact-finder to determine the weight to be accorded to each witness's testimony and to believe all, part, or none of the evidence. The Commonwealth may sustain its burden of proving every element of the crime by means of wholly circumstantial evidence. Moreover, as an appellate court, we may not re-weigh the evidence and substitute our judgment for that of the fact-finder.

*Commonwealth v. Williams*, 176 A.3d 298, 305-06 (Pa.Super. 2017) (citations and quotation marks omitted).

As to Appellant's suppression question, we observe:

An appellate court's standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, the appellate court is bound by those findings and may reverse only if the court's legal conclusions are erroneous. Where the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the courts below are subject to plenary review.

*Commonwealth v. Smith*, 164 A.3d 1255, 1257 (Pa.Super. 2017) (cleaned up).

After a thorough review of the certified record, the parties' briefs and the pertinent law, we discern no error or abuse of discretion on the part of the trial court as to the issues raised by Appellant, and we affirm the judgment of sentence on the basis of the cogent and well-reasoned opinion that Honorable Susan I. Schulman entered on November 18, 2019.

Specifically, Judge Schulman thoroughly and accurately reviewed the applicable law and the evidence offered at trial, and concluded that there was sufficient evidence to support the jury's finding that Appellant possessed the

drugs found in his backpack, and that he did so with the intent to deliver them. **See** Trial Court Opinion, 11/18/19, at 2-7, 12-16. Further, Judge Schulman explained that Appellant's suppression motion lacked merit based upon the law applicable to the validity of search warrants and the contents of the affidavit of probable cause detailing the evidence of drug sales being made out of the residence searched. **Id**. at 8-12. As to all of the foregoing points, we adopt Judge Schulman's reasoning as our own.

Judgment of sentence affirmed.

*Judgment Entered.*

*Joseph D. Seletyn, Esq.*
*Prothonotary*

*Date: 12/23/2020*

FILED
2019 NOV 18 PM 3:48

IN THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY
FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
CRIMINAL TRIAL DIVISION

COMMONWEALTH OF PENNSYLVANIA : CP-51-CR-0009577-2017

 :

VS. :

 :

LAKHAWN HENDERSON : 1541 EDA 2019

## OPINION

SCHULMAN, S.I., J.

Lakhawn Henderson ("Appellant") has appealed the Court's judgment of conviction and sentence. The Court submits the following Opinion in accordance with the requirements of Pa.R.A.P. 1925, and for the reasons set forth herein, recommends that its judgment be affirmed.

## I. PROCEDURAL HISTORY

On January 31, 2019, following a jury trial before this Court, Appellant was convicted of Possession with Intent to Deliver a Controlled Substance ("PWID") and Criminal Conspiracy (to commit PWID).[1] On April 16, 2019, upon consideration of the presentence investigation report and all relevant facts and circumstances of this case, the Court sentenced Appellant to an aggregate term of four to eight years' incarceration.

On April 26, 2019 Appellant filed a post-sentence motion for reconsideration, which the Court denied on April 30, 2019. On May 30, 2019, Appellant filed a Notice of Appeal in the Superior Court. On September 11, 2019, the Court ordered Appellant to file a Concise Statement of Matters Complained of on Appeal in accord with Pa.R.A.P. 1925(b). Counsel timely filed Appellant's Rule 1925(b) Statement on September 30, 2019.

---

[1] Appellant was acquitted of Possessing an Instrument of Crime ("PIC").

## II. FACTUAL HISTORY

At trial, the Commonwealth first presented the testimony of Philadelphia Police Officer John Mouzon. Officer Mouzon testified that, as a member of the 25th District Narcotics Field Unit, his primary function is to investigate "open air" and residential drug sales in North Philadelphia. Officer Mouzon typically investigates such activity via plainclothes surveillance from unmarked vehicles, during which either he makes the undercover buys himself, or he dispatches a confidential informant ("CI") to do so while he surveils the activity. (N.T. 01/29/19 at 102-107).

On September 28, 2017, at approximately 2:00 p.m., Officer Mouzon along with his partner, Officer Cruz, and a CI, set up plainclothes surveillance outside 2244 North 12th Street in Philadelphia, in reference to a tip about sales of narcotics.[2] Prior to the surveillance, the officers searched the CI for United States currency and contraband, both of which were negative; they then supplied the CI with $20 in prerecorded buy money and instructed him to go to 2244 North 12th Street to purchase narcotics. (N.T. 01/29/19 at 106-110).

From an unmarked vehicle located 50 feet away, Officer Mouzon observed the CI approach the property at 2244 North 12th Street, where he was met by a black male named Kevin Rideout and an unknown black female. The CI engaged in a conversation with Kevin Rideout, after which the two men entered the residence along with the black female. Within a few minutes, Kevin Rideout, the black female, and the CI emerged from the home, followed by another individual named Robert Shaw. The CI and Robert Shaw engaged in a conversation on the front porch, following which the CI returned to Officers Mouzon and Cruz with a baggie of

---

[2] In his 22 years of experience, Officer Mouzon had conducted "hundreds" of narcotics surveillances with CIs. (N.T. 01/29/19 at 102-103, 105, 105).

2

marijuana; he also provided the officers with "Rob's" phone number, 267-410-6349. The officers secured the marijuana under property receipt, and searched the CI for contraband or United States currency, and none was found. (N.T. 01/29/19 at 111-114).

Officer Mouzon testified that, later that same afternoon, he returned to 2244 North 12th Street with Officer Cruz and the CI. Upon searching the CI for contraband or currency, which was negative, Officer Mouzon instructed him to call the number obtained from Rob, 267-410-6349, and discuss purchasing additional marijuana. The CI made the call on speakerphone; a male answered and set up to meet the CI at 2244 North 12th Street. The officers supplied the CI with $20 in prerecorded buy money, and watched as he walked up to the porch of the residence, where he was met by the same male, Robert Shaw. The two males entered the residence, and a few minutes later, the CI exited the residence and returned to the officers with another baggie of marijuana, which was secured via property receipt. Officer Mouzon then searched the CI, who had no currency or contraband on his person. (N.T. 01/29/19 at 115-118).

Officer Mouzon terminated surveillance after the second narcotics transaction in order to apply for a search and seizure warrant. He prepared an affidavit of probable cause setting forth all the activities that he observed that day, and the warrant was approved. On the following day, September 29, 2017, Officers Mouzon and Cruz returned to 2244 North 12th Street to execute the warrant. (N.T. 01/29/19 at 119-121).

Upon arrival, Officer Mouzon observed Appellant sitting on the front porch of the target residence, engaged in a conversation with Kevin Rideout and an unknown black male. Officer Mouzon then called the number 267-410-6349, asked for Rob, and the same male from the previous day answered the phone. Officer Mouzon arranged to meet Rob for the purchase of marijuana at 2244 North 12th Street. After the phone call, Officer Mouzon observed Rob emerge

3

from 2244 North 12th Street, and start looking up and down the street before walking eastbound on the 1100 block of Nevada Street, where he entered 1126 Nevada Street. At that point, Officer Mouzon radioed his backup with a description of Robert Shaw and his then-present location. (N.T. 01/29/19 at 121-125).

Before backup officers arrived, Rob emerged from 1126 Nevada Street and resumed looking up and down the street for his would-be buyer. Officer Cruz then apprehended him in the street outside of 2244 North 12th Street. At that point, Kevin Rideout ran inside the residence, where he was apprehended by Officers Candelaria and Johnson. Appellant was apprehended on the front porch by Officer Kidd. (N.T. 01/29/19 at 125-126).

Officer Mouzon testified that police recovered narcotics, including crack cocaine and marijuana, from bedrooms on both the first and second floors of the residence. They also recovered new and unused narcotics packaging, scales, a firearm, letters and a photo ID. Officer Mouzon testified that, based on his experience, the packaging and scales were indicative of a narcotics distribution enterprise. (N.T. 01/29/19 at 126-129).

Philadelphia Police Officer Kevin Wims testified next for the Commonwealth. A 17-year member of the Narcotics Field Unit, Officer Wims testified that on September 29, 2017, he was assigned to the "entry team" that executed the search and seizure warrant at 2244 North 12th Street. At approximately 2:50 p.m., he and his team converged on the property; Officer Wims was specifically assigned to secure the second floor of the residence. While doing so, he checked the middle bedroom, which contained a mattress and box spring on the floor, a backpack on the bed, a plastic storage container, scattered clothing, a table and two chairs -- one of which was a "lawn chair". (N.T. 01/30/19 at 6-11).

4

Officer Wims testified that on top of the lawn chair, there was a folded jacket that contained a loaded .45 caliber handgun.[3] Inside the backpack -- which contained Appellant's photo ID, birth certificate, and a letter with his social security card -- Officer Mouzon found a clear knotted bag containing 20 Ziploc packets of crack cocaine (specifically, four purple-tinted, four pink-tinted and twelve clear packets of crack cocaine). The backpack also contained a clear knotted bag of marijuana. Inside and adjacent to the plastic storage bin, he found numerous additional quantities of crack cocaine (also in individual packets), a large rock of crack cocaine, another baggie of marijuana, an amber pill bottle containing additional packets of crack cocaine, and another pink plastic container of marijuana -- in addition to two scales and multiple new and unused Ziploc packaging of the same color varieties. All of the above evidence was secured via property receipts, which, just with respect to the narcotics, inventoried 51 individual containers/packets of crack cocaine and 3 baggies/containers of marijuana. (See N.T. 01/30/19 at 11-20 & Exhibits "C-29" and "C-31").[4]

The Commonwealth next called its expert ballistician, Philadelphia Police Officer Carl Drew, to the stand. Officer Drew testified that the firearm recovered from the second floor middle bedroom was a "Remington M191A1" handgun. Officer Drew test fired the gun and determined it to be operable. (N.T. 01/30/19 at 52-56).

Next, Philadelphia Police Officer Kevin Keys testified as an expert in narcotics packaging and distribution. Officer Keys -- who had spent 19 of his 30 years as a police officer in the Narcotics Field Unit -- testified that in his expert opinion, the crack cocaine recovered

---

[3] Officer Wims also found two boxes of live ammunition, one in the backpack and one on the floor next to the bed. (N.T. 01/30/19 at 11, 14-15, 24).

[4] Officer Wims further testified that, based on his experience, the scales indicated that they were being used to weigh the narcotics prior to packaging, and the many new and unused packets signified an intent to fill them with narcotics for distribution. (See N.T. 01/30/19 at 21-23).

5

from the upstairs bedroom was possessed with the intent to distribute. Officer Keys explained the basis for his opinion:

The amount of packets. You had 51 smaller packets plus one bigger packet.

Out of the 51, you had 23 nickel bags or $5 bags and 28 dime bags. And nine of them, I believe, was powdered cocaine.

Also, in the one bag was a chunk of about 4.806 grams.

That's a little bigger than -- what they call -- an "8 Ball," which is 3.5 grams.

The total weight of all the crack cocaine in this incident was 7.417 grams. If that weight was just in one bulk, it would be about -- which would be a quarter ounce of crack cocaine. But once broken down into packets -- the quarter ounce goes for about [$]250, but once broken down into packets, it's roughly $875. So that's roughly about a $625 profit.

And that's consistent with distribution. The objective of a distributer is to take a small amount of cocaine, put it in packets to make the most amount of money.

If it was a user, a user objective, is to get the most amount of the product, in this particular case, crack cocaine, for the least amount of money.

\*       \*       \*

Also, you have nickel bags, $5 bags and $10 bags and then you have a chunk. That's another reason why it's consistent with distribution, because if a user had access to bulk, they would not invest in small packets. In this particular case, you have a combination of both.

I also had an opportunity to see the scales that were presented to Officer Wims. You had a bigger scale and a smaller scale. The bigger scale is to weigh bigger bags to be broken down. And the smaller scale is to put -- once they put the product into smaller packets, then you weigh the small packet so you can differentiate between a $5 bag or a $10 bag.

6

Also, you did have some new and unused packaging. I believe it was the clear packaging that was consistent with the crack cocaine.

\* \* \*

So based on the evidence in this particular case, the crack cocaine in this particular incident is very consistent with distribution.

(N.T. 01/30/19 at 61-64).

Finally, prior to resting its case, the Commonwealth introduced stipulations establishing that the substances recovered were analyzed at the police chemistry lab and were determined to be of cocaine base (a total of 7.4 grams) and marijuana (a total of 52.6 grams). (See N.T. 01/30/19 at 85-88 & Exhibits "C-5b", "C-7b" & "C-29a").

For his case-in-chief, Appellant did not call any witnesses, but offered the following stipulations into evidence:

[Counsel for Appellant] Mr. Bermudez: First, the Commonwealth would stipulate to the fact that the person, Robert Shaw, received a letter from PECO, the energy company, and did have an account with the utility company on the day the warrant was executed in this case for the address 2244 North 12th Street.

Additionally, Your Honor, the Commonwealth would stipulate that if called to testify, Officer Mouzon -- if recalled -- would have testified that he took two pictures, which have been premarked as Defense Exhibits 5-E and 5-F, were taken during the day of the execution at 2244 North 12th Street. And that D-5-E was the first floor middle bedroom, and D-5-F was the first floor rear bedroom.

(N.T. 01/30/19 at 98-99).

Upon consideration of all the foregoing evidence, the jury found Appellant guilty of PWID and Criminal Conspiracy. Following a comprehensive pre-sentence investigation, the Court imposed sentence as previously set forth.

7

III.    ISSUES ON APPEAL

Appellant sets forth the following issue in his Rule 1925(b) Statement:

1.    The trial court committed a legal error in denying Appellant's motion to suppress the physical evidence, marijuana, crack-cocaine, scales, package[ing] and other drug paraphernalia, found on the second floor at 2244 N. 12ᵗʰ St. Philadelphia because the four-corners of the search warrant lacked probable cause that a stash of drugs or evidence of crime was within it. (N.T., motions hearing, 6/11/2018, and raised in a written motion to suppress submitted to this Court).

2.    The evidence at trial was insufficient to prove the *mens rea* and *actus rea* elements to the charge of possession with an intent to deliver a controlled substance, crack cocaine, as the evidence adduced at trial did not establish the elements of the constructive possession doctrine beyond a reasonable doubt.

(Appellant's Rule 1925(b) Statement, ¶¶ 1-2).

IV.    DISCUSSION

1.    **Motion to Suppress the Physical Evidence**

Appellant claims that the Court erred by denying his motion to suppress because the affidavit for the search warrant did not establish probable cause that contraband would be found in the residence. This claim is without merit.

A.    **Relevant Standards**

The Pennsylvania Supreme Court has long recognized that, in deciding whether to issue a search warrant, "'[t]he task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place.'"

8

Commonwealth v. Gray, 503 A.2d 921, 925 (Pa. 1985) (quoting Illinois v. Gates, 462 U.S. 213, 238 (1983)).

Importantly, the role of the trial court -- or any court reviewing the issuing authority's probable cause determination -- "'[is] **not** to conduct a *de novo* review of the issuing authority's probable cause determination, but [is] simply to determine whether or not there is substantial evidence in the record supporting the decision to issue the warrant.'"
Commonwealth v. Jones, 988 A.2d 649, 655 (Pa. 2010) (emphasis added) (quoting Commonwealth v. Torres, 764 A.2d 532, 540 (Pa. 2001)). "'[T]he reviewing court must accord deference to the issuing authority's probable cause determination, and must view the information offered to establish probable cause in a common-sense, non-technical manner.'"
Jones, 988 A.2d at 655 (quoting Torres, 764 A.2d at 538).

### B. Application

Applying the foregoing, there is ample evidence in the record supporting the magistrate's decision to issue the warrant. Specifically, the affidavit of probable cause detailed multiple drug transactions occurring inside 2244 North 12th Street:

> Your Affiant (P/O Mouzon#5293) along with Members of the NFU/SQ#4H went to the area of 1100 Huntingdon Street in reference to a[n] Aggravated Assault via Firearm which occurred on (8-15-17) and illegal Narcotics Sales (high drug area).
>
> On 9-28-17 Your Affiant (P/O Mouzon#5293) along with P/O Cruz#6979 met with CI#01195 between the hours of 2:00pm and 4:00pm (exact time with held [*sic*] to protect the CI). P/O Cruz#6979 ... searched CI#01195 for illegal contraband and [United States currency] with negative results. CI#01195 was supplied with $20.00 pre-recorded buy money serial#MB05481256G and was instructed to go to 2244 N 12th Street to purchase Narcotics. CI#01195 then went to 2244 N 12th Street and met with a[n] unk[nown] b/m wearing a white t-shirt and grey pants and another unk[nown] b/f wearing a green baseball

9

cap, stripe shirt and jeans and they had a brief drug related conversation outside 2244 N 12th Street and after this conversation CI#01195 along with unk[nown] b/m wearing a white t-shirt and grey pants and the unk[nown] b/f wearing a green baseball cap, stripe shirt and jeans then entered 2244 N 12th Street. The unk[nown] b/m wearing a white t-shirt and grey pants then exited 2244 N 12th Street and sat on the portch and the unk[nown] b/f wearing a green baseball cap[,] stripe shirt and jeans also exited 2244 N 12th Street [a]nd left the area s/b on 2200 N 12th Street and went out of view. CI#01195 then exited 2244 N 12th Street along with a b/m wearing a black baseball cap, black t-shirt, orange shorts and black sneakers then exited 2244 N 12th Street and had a brief conversation with CI#01195 on the porch of 2244 N 12th Street. CI#01195 then met back with Your Affiant (P/O Mouzon#5293) and P/O Cruz#6979 and turned over one clear plastic knotted baggie which contained alleged Marijuana and the phone number 267-410-6349 and the name Rob which was given to CI#01195 by the b/m wearing a black baseball cap, black t-shirt, orange shorts and black sneakers (made transaction with CI). P/O Cruz#6979 ... searched CI#01195 for illegal contraband and [United States currency] with negative results. Your Affiant (P/O Mouzon#5293) and P/O Cruz#6979 then terminated surveillance.

On 9-28-17 Your Affiant (P/O/ Mouzon#5293) and P/O Cruz#6979 and CI#01195 returned to the area of 2244 N 12th Street between the same hours of 2:00pm and 4:00pm (exact time with held [sic] to protect the CI). P/O Cruz#6979 ... searched CI#01195 for illegal contraband and [United States currency] with negative results. CI#01195 was supplied with $20.00 pre-recorded buy money serial#MC63456201B and was instructed to place a call to that number and engage in a brief drug related conversation. CI#01195 then placed a call to that number and a male voice answered and CI#01195 then engaged in a brief drug related conversation and after this conversation CI#01195 then went to 2244 N 12th Street. CI#01195 then met with the same b/m aka Rob wearing a black baseball cap, black t-shirt, orange shorts and black sneakers (made transaction with CI earlier) and they had a brief conversation and both went inside 2244 N 12th Street. CI#01195 then exited 2244 N 12th Street and met back with Affiant (P/O Mouzon#5293) and P/O Cruz#6979 and turned over four green plastic containers each one contained alleged Marijuana. P/O Cruz#6979 ... searched CI#01195 for illegal contraband and [United States currency] with negative results. The b/m aka Rob wearing a black baseball cap, black t-shirt, orange shorts and black

10

sneakers then exited 2244 N 12th Street. Your Affiant (P/O Mouzon#5293) and P/O Cruz#6979 then terminated surveillance.

Your Affiant returned to HQ and performed a Nik Test E on a portion of the items purchased which was positive for Marijuana and was placed on [property receipt] #3313378 (1st buy) and [property receipt] #3313379 (2nd buy).

* * *

Your Affiant, P/O John Mouzon#5293 has been a Philadelphia Police Officer for 21 years and is currently assigned to the Narcotics Field Unit. In this amount of time your affiant has been involved in hundreds of narcotics investigations, which included surveillances, arrests, the execution of search and seizure warrants and undercover operations. Your Affiant has been trained in identifying and recognizing narcotics, narcotics packaging, and the distribution of narcotics for street sales. Your Affiant has been certified to conduct field tests for narcotics. All of Your Affiant[']s training [has] been supplied by the Philadelphia Police Department.

BASED UPON THE ABOVE FACTS, I YOUR AFFIANT BELIEVE THAT NARCOTICS ARE BEING SOLD AND STORED AT THE LOCATION OF 2244 N 12TH STREET PHILADELPHIA, PA [ ] AND RESPECTFULLY REQUEST THAT A SEARCH AND SEIZURE WARRANT BE GRANTED.

(Exhibit C-39; see also N.T. 06/11/18 at 11-15). As such, there is ample evidence to support the issuance of a warrant in this case.

Moreover, the argument advanced by Appellant -- i.e., that the affidavit failed to establish probable cause because it did not establish a "nexus to the house" under Commonwealth v. Clark, 28 A.3d 1284 (Pa. 2011) and Commonwealth v. Gagliardi, 128 A.3d 790 (Pa. Super 2015), (See N.T. 06/11/18 at 7-8) -- is wholly unavailing. Indeed, apart from the fact that the warrants in Clark and Gagliardi were upheld, both of these cases involved drug transactions occurring solely outside the premises, hence lending to the notion of a missing link. See Clark, 28 A.3d at 1285; Gagliardi, 128 A.3d at 792.

11

Here, conversely, there is no possibility of a missing link as police observed multiple controlled buys occurring *inside* the target premises. *A fortiori*, therefore, the warrant issued in this case was proper under Clark and Gagliardi. As such, Appellant's claim is entirely without merit.

## 2. Sufficiency of the Evidence Supporting Appellant's PWID Conviction

Appellant also contends that the evidence was insufficient to sustain his conviction for PWID,[5] arguing that the evidence did not show a criminal intent or act on his part. The record, including all direct and circumstantial evidence, soundly refutes this claim.

### A. Sufficiency Standard

In evaluating a challenge to the sufficiency of the evidence, a reviewing court must view the evidence in the light most favorable to the Commonwealth as verdict winner. It accepts as true all the evidence, direct and circumstantial, and all reasonable inferences arising therefrom upon which the finder of fact could properly have based its verdict, in determining whether the evidence and inferences are sufficient to support the challenged conviction. Commonwealth v. Carroll, 507 A.2d 819, 820 (Pa. 1986); Commonwealth v. Griscavage, 517 A.2d 1256, 1259 (Pa. 1986); Commonwealth v. Hopkins, 747 A.2d 910, 913 (Pa. Super. 2000).

"[T]he facts and circumstances established by the Commonwealth need not preclude every possibility of innocence." Commonwealth v. Jones, 874 A.2d 108, 120 (Pa. Super. 2005); see Commonwealth v. Rippy, 732 A.2d 1216, 1218-1219 (Pa. Super. 1999) (while conviction must be based on more than mere speculation, "the Commonwealth need not establish guilt to a mathematical certainty"). **"Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no**

---

[5] Appellant does not challenge the sufficiency of the evidence supporting his conviction for Criminal Conspiracy. See Appellant's Rule 1925(b) Statement.

12

probability of fact may be drawn from the combined circumstances." Commonwealth v. Hutchinson, 947 A.2d 800, 806 (Pa. Super. 2008) (emphasis in original); see also Commonwealth v. Sneddon, 738 A.2d 1026, 1027 (Pa. Super. 1999).

"The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence." Commonwealth v. Jones, 874 A.2d at 120. Thus, the decision of the trier of fact will not be disturbed where there is support for the verdict in the record. Commonwealth v. Bachert, 453 A.2d 931, 935 (Pa. 1982). When assessing the sufficiency of the evidence, a reviewing court "may not weigh the evidence and substitute [its] judgment for that of the fact-finder." Commonwealth v. Vetrini, 734 A.2d 404, 407 (Pa. Super. 1999)

"Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered." Hutchinson, 947 A2d at 806. "Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence." Id.

### B. PWID

A person is guilty of possession with intent to deliver if he possesses a controlled substance with the intent to deliver it. 35 P.S. §780-113(a)(30); Commonwealth v. Parsons, 570 A.2d 1328, 1334 (Pa. Super. 1990). All facts and circumstances surrounding possession are relevant in making a determination of whether contraband was possessed with intent to deliver it. Commonwealth v. Ramos, 573 A.2d 1027, 1032 (Pa. Super. 1990).

13

## C. Constructive Possession

Possession of contraband is proven by evidence of actual possession where the contraband is found on the defendant's person, or by evidence that the defendant constructively possessed it. Commonwealth v. Valette, 613 A.2d 548, 550 (Pa. 1992); Commonwealth v. Macolino, 469 A.2d 132, 134 (Pa. 1986); Commonwealth v. Clark, 746 A.2d 1128, 1136 (Pa. Super. 2000) (en banc); Commonwealth v. Davis, 743 A.2d 946, 953 (Pa. Super. 1999). "Constructive possession has been defined as the ability to exercise a conscious dominion over the illegal substance: the power to control the contraband and the intent to exercise that control." Macolino, 469 A.2d at 134. See also Valette, 613 A.2d at 550; Commonwealth v. Mudrick, 507 A.2d 1212, 1213 (Pa. 1986). "Constructive possession is an inference arising from a set of facts that possession of the contraband was more likely than not." Mudrick, supra.

"As with any other element of a crime, constructive possession may be proven by circumstantial evidence. The requisite knowledge and intent may be inferred from examination of the totality of the circumstances." Commonwealth v. Haskins, 677 A.2d 328, 330 (Pa. Super. 1996) (citations omitted); see also Valette, 613 A.2d at 550; Commonwealth v. Austin, 631 A.2d 625, 629 (Pa. Super. 1993). Although not alone dispositive, a defendant's presence at the location where contraband is found is a clear factor establishing knowledge that the contraband is present, as well as the exercise of dominion and control over such contraband. Commonwealth v. Aviles, 615 A.2d 398, 403 (Pa. Super. 1992) (en banc); see also Commonwealth v. Parsons, 570 A.2d 1328, 1335 (Pa. Super. 1990); Commonwealth v. Harris, 397 A.2d 424, 429 (Pa. Super. 1979); Commonwealth v. Carter, 326 A.2d 480, 482 (Pa. Super. 1974).

Additionally, even though other persons may have access to the contraband, constructive possession may be established where the Commonwealth's evidence connects the defendant to

14

the location where the contraband was kept. Commonwealth v. Rippy, 732 A.2d 1216, 1220 (Pa. Super. 1999); Commonwealth v. Davis, 480 A.2d 1035, 1045 (Pa. Super. 1984) (knowledge of the location of the contraband and intent to exercise control over such may be inferred from access to it and the other surrounding circumstances, even though others have equal access thereto) (citing Commonwealth v. Banahasky, 378 A.2d 1257 (Pa. Super. 1977)).

### D.    Application

The direct and circumstantial evidence, along with all reasonable inferences viewed in light most favorable to the Commonwealth, establishes that Appellant constructively possessed the contraband seized from the residence. At the time of the execution of the warrant, Appellant was present at the subject property. While they did not observe Appellant personally engage in drug transactions, Police recovered narcotics from *two separate areas* of the house, namely, bedrooms on the first and second floors. In the latter bedroom on top of the bed, they found a backpack containing Appellant's photo ID, birth certificate and social security card. As such, it was plain -- and the jury certainly was entitled to infer -- that the backpack belonged to Appellant, and connected him to the location of the contraband. See, e.g., Aviles, supra; Rippy, supra.

Inside Appellant's backpack, they found 20 packets of crack cocaine and a plastic baggie of marijuana. From a storage bin a few feet away, police recovered additional quantities of crack cocaine (packaged in the same fashion), a large rock of crack cocaine, two bags/containers marijuana, two scales and multiple new and unused Ziploc packaging. Further, the Commonwealth adduced uncontroverted expert opinion testimony establishing that, based on the overall weight and packaging of the crack cocaine into numerous smaller packets, as well as the

15

presence of scales and new/unused packaging, the crack cocaine in this case was possessed with the intent to deliver. As such, the evidence amply supported Appellant's conviction for PWID.

## V.    CONCLUSION

Based on the reasons set forth in the foregoing Opinion, this Court's judgment of sentence should be affirmed.

BY THE COURT:

DATE: 11/15/19

SUSAN I. SCHULMAN, J.