J-A21007-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| IGNACIO MORALES | : | No. 2672 EDA 2022 |

Appeal from the Order Entered September 19, 2022
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0009076-2021

BEFORE:   BENDER, P.J.E., NICHOLS, J., and COLINS, J.[*]

MEMORANDUM BY NICHOLS, J.:                **FILED FEBRUARY 14, 2024**

The Commonwealth appeals from the trial court's order granting Appellee Ignacio Morales's motion to suppress.[1]  The Commonwealth argues that the trial court erred in concluding that the police were required to have a warrant in order to arrest Appellee on his outdoor front porch.  After careful review, we reverse the trial court's order and remand for further proceedings.

The trial court summarized the underlying facts of this matter as follows:

[O]n May 5, 2021, at around 6:00 p.m., [Philadelphia Police] Officer Brian Delricci viewed an Instagram Live video that depicted

---

[*] Retired Senior Judge assigned to the Superior Court.
[1] In its notice of appeal, the Commonwealth certified that the trial court's suppression order would terminate or substantially handicap the prosecution of its case.  ***See*** Pa.R.A.P. 311(d) (stating that "in a criminal case, under the circumstances provided by law, the Commonwealth may take an appeal as of right from an order that does not end the entire case where the Commonwealth certifies in the notice of appeal that the order will terminate or substantially handicap the prosecution").  Notice of Appeal, 10/18/22; ***see also*** Commonwealth's Brief at 1.

[Appellee] in a white shirt and a bedazzled ski mask brandishing a black firearm. The video then switched to a street-facing angle and showed [Appellee] walking down a sidewalk Officer Delricci recognized as the 100-block of East Albanus Street.

The Instagram account had the username @phillyrambo20. The account user had posted pictures of [Appellee] prior to that day. Officer Delricci spoke to other police officers who knew [Appellee]. They advised Officer Delricci that [Appellee] did not have a license to carry a firearm.

Officer Delricci and his partner Officer Sidebothan[2] **went to [Appellee's] house at 147 East Albanus Street minutes after viewing the video. [Appellee] was sitting on his porch with his feet on the top step, still wearing the ski mask.** The police officers arrested [Appellee] for possessing a firearm on a public street without a license and seized a black Glock firearm from him.

Trial Ct. Op., 12/16/22, at 2 (some formatting altered, citations omitted, emphasis added).

As a result of this encounter, the Commonwealth charged Appellee with carrying a firearm without a license and carrying a firearm in public in Philadelphia.[3] Prior to trial, Appellee filed a motion to suppress in which he argued that the police improperly arrested Appellee without a warrant. *See* Motion to Suppress, 4/5/22, at 1-2 (unpaginated). Following a hearing on September 19, 2022, the trial court granted Appellee's motion.

_____

[2] Officer Sidebothan's first name does not appear in the record.

[3] 18 Pa.C.S. §§ 6106 and 6108, respectively. Following a preliminary hearing held before the Philadelphia Municipal Court on October 29, 2021, the Municipal Court dismissed the charge for carrying a firearm in public in Philadelphia.

The Commonwealth filed a timely notice of appeal and a court-ordered Pa.R.A.P. 1925(b) statement. The trial court issued a Rule 1925(a) opinion addressing the Commonwealth's claim.

The Commonwealth raises the following issues for our review, which we have reordered as follows:

1. [Whether the trial court erred in suppressing evidence] when the [trial] court concluded, contrary to binding Supreme Court of the United States precedent, that despite the existence of probable cause to arrest [Appellee], a warrant was required to arrest him on his outdoor front porch[?]

2. [Whether the trial court erred in suppressing evidence] on a ground for which the Commonwealth was not given fair notice or a meaningful opportunity to disprove[?]

Commonwealth's Brief at 4.

In its first issue, the Commonwealth contends that Appellee's motion to suppress "lacked legal merit and should have been denied." Commonwealth's Brief at 15. Specifically, the Commonwealth argues that because Appellee was arrested on his front porch, where he could be seen from the street, the police did not need a warrant to place him under arrest. **Id.** Further, the Commonwealth emphasizes there is no dispute that police had probable cause to believe that Appellee had committed a felony. **See id.** at 11; **see also** N.T. Suppression Hr'g, 9/19/22, at 23 (reflecting that the trial court credited Officer Delricci's testimony and found that the officers had probable cause). Therefore, the Commonwealth concludes that the trial court erred in granting Appellee's motion to suppress.

- 3 -

When reviewing a challenge to a suppression ruling, our standard of review is

> limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the [defense] prevailed before the suppression court, we may consider only the evidence of the [defense] and so much of the evidence for the [Commonwealth] as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, the appellate court is bound by those findings and may reverse only if the court's legal conclusions are erroneous. Where the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the courts below are subject to plenary review.

*Commonwealth v. Smith*, 164 A.3d 1255, 1257 (Pa. Super. 2017) (citation omitted and formatting altered). "Additionally, the Pennsylvania Supreme Court has ruled that when reviewing a motion to suppress evidence, we may not look beyond the suppression record." *Id.* (citation omitted).

The Supreme Court of the United States has held that the "Fourth Amendment . . . prohibits the police from making a warrantless and nonconsensual entry into a suspect's home in order to make a routine felony arrest." *Payton v. New York*, 445 U.S. 573, 576 (1980); *see also Commonwealth v. Chisholm*, 198 A.3d 407, 412 (Pa. Super. 2018) (applying *Payton*). In Pennsylvania, the police may arrest a suspect in a public place without a warrant for a felony upon a showing of probable cause

that a felony has been committed and that the person being arrested is the suspected felon. ***Commonwealth v. Martin***, 101 A.3d 706, 721 (Pa. 2014).

The Commonwealth directs this Court to the Supreme Court of the United States' decision in ***United States v. Santana***, 427 U.S. 38 (1976). In ***Santana***, the Philadelphia Police Department arrested the defendant in the vestibule of her house without a warrant. ***Id.*** at 40. Ultimately, the High Court held that for Fourth Amendment purposes, the threshold of one's private dwelling is a public place because the defendant does not enjoy any expectation of privacy. ***Id.*** at 42.

Here, in its Rule 1925(a) opinion, the trial court provided the following analysis:

> The Fourth Amendment requires police to obtain a warrant to arrest defendants in their home absent exigent circumstances or consent. ***Payton***, 445 U.S. 576. This protection extends to the curtilage of the defendant's house. ***Oliver v. United States***, 466 U.S. 170, 180 (1984). The police are not relieved of their obligation to obtain a warrant to arrest a defendant just because they seize him on the curtilage of his home rather than within its four walls. ***United States v. Perea-Rey***, 680 F.3d 1179, 1184 (9th Cir. 2012). The Supreme Court has provided guidance for discerning whether a particular place on person's property constitutes curtilage to which Fourth Amendment protections extend. ***United States v. Dunn***, 480 U.S. 294, 301 (1987) (identifying the central question as whether the place falls within the home's umbrella and listing four factors: proximity, use, enclosure, and steps taken to conceal the place from passers-by). The Court has subsequently found that "the front porch is the

classic exemplar" of curtilage protected by the Fourth Amendment. ***Florida v. Jardines***, 569 U.S. 1, 7 (2013).[4]

Trial Ct. Op. at 3 (some citations altered).

It is well settled that "[a]bsent probable cause and exigent circumstances, warrantless searches and seizures in a private home violate both the Fourth Amendment and Article I, Section 8 of the Pennsylvania Constitution." ***Commonwealth v. Gibbs***, 981 A.2d 274, 279 (Pa. Super. 2009) (citation omitted). "These constitutional protections have been extended to the curtilage of a person's home. Curtilage has been defined in constitutional context as in the common law, by reference to factors that determine whether an individual reasonably may expect that an area immediately adjacent to the home will remain private." ***Id.*** (citations omitted and some formatting altered).

This Court has also stated that "[i]t is . . . well established that a person cannot have a reasonable or justifiable expectation of privacy in things or activities which are generally visible from some public vantage point."

_____

[4] We note that when the Supreme Court determined that the "front porch is the classic exemplar" of curtilage protected by the Fourth Amendment in ***Jardines***, the Court did so in the context of reviewing what the Court ultimately determined to be a warrantless search. ***See Jardines***, 569 U.S. at 11-12. Specifically, the Court concluded that the "government's use of trained police dogs to investigate the home and its immediate surroundings is a 'search' within the meaning of the Fourth Amendment." ***Id.*** The ***Jardines*** Court, however, also noted that police officers "need not shield their eyes when passing by [a] home on public thoroughfares, an officer's leave to gather information is sharply circumscribed when he steps off those thoroughfares and enters the Fourth Amendment's protected areas." ***Id.*** at 7 (citations omitted and formatting altered).

*Commonwealth v. Lemanski*, 529 A.2d 1085, 1091 (Pa. Super. 1987) (citing *California v. Ciraolo*, 476 U.S. 207, 213 (1986)). However, the question of whether an individual has a reasonable expectation of privacy "must be addressed on a case-by-case basis." *Commonwealth v. Cruz*, 166 A.3d 1249, 1256 (Pa. Super. 2017) (quoting *City of Ontario v. Quon*, 560 U.S. 746, 756-57 (2010)).

In *Gibbs*, our Supreme Court held that a front porch does not constitute curtilage where there is no gate, front yard, or other enclosed space preceding or surrounding a porch that abuts a sidewalk. *See Gibbs*, 981 A.2d at 279. In reaching that conclusion, the *Gibbs* Court explained:

> The evidence established that there was no front yard or other enclosed space preceding or surrounding the porch; rather, the porch butted up against the sidewalk. There was no gate blocking entry to the porch and nothing else which would indicate that the porch was closed to members of the general public. Further, the porch was an empty, unenclosed, concrete slab that was used by deliverymen and visitors to the apartment.

*Id.* at 280 (citations omitted).

In the instant case, the trial court addressed Appellee's suppression claim as follows:

> Here, Officer Delricci and his partner arrested [Appellee] as he sat on his front porch. [Appellee's] porch is connected to his home. It is set back approximately 30 feet from the street and sits atop a flight of steps. It was enclosed by a railing and has an awning, partially shielding it from view. There is a small, fenced-in yard between the public sidewalk and the porch where [Appellee] stored recycling bins. On these facts, [Appellee's] porch fell within the "umbrella" of his home, and his location there entitled him to the Fourth Amendment's protection from a warrantless arrest absent exigency, which the Commonwealth does not claim here.

- 7 -

\*    \*    \*

Finally, [Appellee's] porch had a railing and an awning that extended from the house and enclosed the area, and there was no testimony about public use. **Gibbs** does not apply.

Because [Appellee] was within the curtilage of his home as he sat on his porch, the police were required to obtain a warrant for his arrest. The firearm was recovered incident to an unlawful arrest and was properly suppressed.

Trial Ct. Op. at 3-5.

Following our review, we conclude that the record does not support the trial court's factual findings and that the legal conclusions drawn from those conclusions were in error. **See Smith**, 164 A.3d at 1257. There is no dispute that the police arrived at Appellee's residence, within minutes of viewing the video, and that he was seated on the front porch, still wearing the ski mask, with his feet on the top step of the stairs that lead from the porch to the sidewalk. **See** N.T. Suppression Hr'g at 20. During the suppression hearing, the Commonwealth introduced a photograph depicting the front of Appellee's house. **See** N.T. Suppression Hr'g, at 11.[5,6] The photograph demonstrates that the area where Appellee was seated was not covered by an awning, does not have a railing, and is not behind the fence that encloses Appellee's front yard on one side of the property. **See id.** Further, there is no fence or gate

---

[5] A copy of Commonwealth's Exhibit 5 is included in the trial court's opinion. **See** Trial Ct. Op. at 4.

[6] During the suppression hearing, Appellee used Commonwealth's Exhibit 5 to describe his house. **Id.** at 19-20.

blocking access from the sidewalk to the steps leading up to the front porch, which is visible from the street. ***See id.*** On this record, there was no evidence to support an assertion that Appellee had a reasonable expectation of privacy in that area. ***See Gibbs***, 981 A.2d at 279; ***see also Lemanski***, 529 A.2d 1085. Therefore, the trial court erred in granting Appellee's motion to suppress.

In its remaining issue, the Commonwealth contends that the trial court erred in granting Appellee's suppression motion based on grounds that were "not stated with specificity in [Appellee's] written motion to suppress." Commonwealth's Brief at 12. In light of our disposition of the Commonwealth's first issue, this issue is now moot.

For these reasons, we reverse the trial court's order granting Appellee's motion to suppress and remand for further proceedings consistent with this memorandum.

Order reversed. Case remanded. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 2/14/2024