J-A02009-17

2017 PA Super 170

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA<br><br>Appellee<br><br>v.<br><br>DAVID SMITH<br><br>Appellant | IN THE SUPERIOR COURT OF PENNSYLVANIA<br><br><br><br><br><br><br><br>No. 521 EDA 2015 |

Appeal from the Judgment of Sentence September 11, 2014
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0013850-2012

BEFORE: OTT, J., RANSOM, J., and FITZGERALD, J.[*]

OPINION BY OTT, J.:                                    **FILED MAY 31, 2017**

David Smith appeals from the judgment of sentence imposed on September 11, 2014, in the Court of Common Pleas of Philadelphia County following his conviction by jury on charges of first-degree murder, robbery, and carrying a firearm on public streets of Philadelphia without a license.[1] Smith was sentenced to a term of life incarceration. In this timely appeal, he raises one issue. Smith claims the trial court erred in failing to suppress results of the warrantless testing of DNA evidence taken from his clothing and person. After a thorough review of the submissions by the parties, relevant law, and the certified record, we affirm.

_____

[*] Former Justice specially assigned to the Superior Court.

[1] 18 Pa.C.S. §§ 2502, 3701 and 6108, respectively.

The specifics of the underlying crime are not directly relevant to the resolution of the issue presented. Accordingly, we simply note that in the early morning hours of July 26, 2012, Smith shot and killed Andre Strum (the Victim) near the corner of 66th Street and Haddington Lane, Philadelphia. Smith also stole approximately $2,800.00 from the Victim. As he was being arrested, the police noticed what appeared to be blood on Smith's shoes. The shoes were confiscated pursuant to Smith's lawful arrest. The police also recovered a stained t-shirt belonging to Smith while executing a search warrant at Smith's girlfriend's residence. Both shirt and shoes were submitted for DNA analysis.[2] Pursuant to a warrant, buccal swabs were taken from Smith after his arrest.

Smith sought to suppress the DNA evidence, claiming the Commonwealth was required to obtain a warrant specifically to conduct the DNA test on the blood samples. The trial court denied the motion and Smith was subsequently convicted of the crimes mentioned above. In this timely appeal, Smith claims the trial court erred in failing to suppress the DNA evidence that was obtained without the benefit of a warrant.

The standard of review for the denial of a motion to suppress evidence is as follows:

---

[2] There were at least two contributors to the blood on the shoe. The Victim was positively identified as one and Smith could not be ruled out as the second contributor. The Victim was found to be the sole contributor of blood on the t-shirt.

[An appellate court's] standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, [the appellate court is] bound by [those] findings and may reverse only if the court's legal conclusions are erroneous. Where ... the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the courts below are subject to [ ] plenary review.

*Commonwealth v. Jones*, 121 A.3d 524, 526-27 (Pa. Super. 2015) (citation omitted).

Additionally, the Pennsylvania Supreme Court has ruled that when reviewing a motion to suppress evidence, we may not look beyond the suppression record. *See In re L.J.*, 79 A.3d 1073 (Pa. 2013). This is important as the certified record is unclear whether the DNA analysis report had been generated or delivered to Smith at the time of the suppression hearing.

Here, the trial court determined the seizure of the physical evidence, Smith's shirt, shoes and the buccal swab, were all constitutionally sound. The shirt and buccal swabs were obtained by search warrant. *See* Search Warrants 167301 (shirt) and 167303 (buccal swab). We note Warrant 167303 was obtained for the stated purpose "to obtain a DNA sample for

comparison against any/all other evidence in this investigation." *Id*. Accordingly, the purpose of DNA analysis of the buccal swab was established in the warrant. Smith's shoes were properly seized in a search incident to his lawful arrest. *See Commonwealth v. Ingram*, 814 A.2d 264 (Pa. Super. 2002) (warrantless search incident to lawful arrest is reasonable, and no justification other than the arrest is required). Accordingly, the trial court reasoned Smith's constitutional rights were not violated. This analysis is sound, yet does not address Smith's specific argument that the extraction and analysis of the DNA samples represented an additional search that required a warrant.

Smith concedes that the physical evidence consisting of his orange t-shirt, shoes, and buccal swabs were all legally seized by the police. *See* Smith's Brief at 29, 40. However, he asserts that because DNA can "reveal 'physiological data' and a 'host of private medical facts,' such analyses may 'intrude [] upon expectations of privacy that society has long recognized as reasonable.'" Smith's Brief, at 23 (*citing* *United States v. Davis*, 690 F.3d 226, 243 (4th Cir. 2012)). As such, Smith contends his privacy interest in information that may have been obtained by the DNA analysis of his blood, required a separate warrant. *See Commonwealth v. Mitchell*, 652 F.3d 387 (3rd Cir. 2011). *See also*, *Commonwealth v. Barton*, 690 A.2d 293 (Pa. Super. 1997) (Pennsylvania citizens have a reasonable expectation of privacy in their medical records). We conclude Smith's argument is unavailing.

Initially, we agree with the Commonwealth's assertion that historically no separate warrant has ever been required to conduct scientific testing upon physical evidence lawfully obtained by the Commonwealth. However, the cases cited by the Commonwealth, **Commonwealth v. Stallworth**, 781 A.2d 110 (Pa. 2001), and **Commonwealth v. Aljoe**, 216 A.2d 50 (Pa. 1966) addressed the warrantless seizure of clothing incident to the arrest of the defendant. Although, in those cases, the clothing was subsequently tested for the presence of biological or other trace evidence, the constitutionality of that testing was not at issue. While such scientific testing was allowed, the privacy issues currently before this panel were not before prior panels. Accordingly, while those cases have some instructive value, they do not resolve the issues before us.

Smith bases his argument upon the assertion that DNA can reveal medical information he is entitled to protect. There are multiple failings in that argument.

While we agree with Smith's assertion as a matter of science, he presented no evidence to the suppression court that such personal medical information would actually be obtained. DNA analysis has been in use for many years, yet Smith has provided no instance in which the type of information he instantly seeks to protect has ever been either obtained or

used at trial.[3] Because Smith has not demonstrated that this information would actually be obtained by the Commonwealth, he is essentially seeking to prevent a harm that he cannot show has occurred; without anything other than his unsupported concern, the suppression court had no proof of a demonstrable harm to prevent or correct.[4] Without a showing that such information would actually be obtained, we do not believe Smith has articulated a protectable privacy interest in the blood sample.

Although Smith cites **Miller** in support of his argument,[5] our reading of **Miller** leads to the opposite conclusion. **Miller** holds that an individual does not have a protectable privacy interest in a blood sample that is used for identification purposes. Specifically:

> A useful analogue is case law assessing the validity of fingerprinting arrestees and pretrial detainees as part of a routine booking process.

---

[3] For informational purposes only, we surveyed a number of Pennsylvania and Federal criminal appeals and found no indication that any protectable medical information was ever obtained or used. The only use of DNA identified in these cases was for identification purposes. Smith has not challenged the use of DNA for identification purposes.

[4] We are mindful of the United States Supreme Court admonition, "The judiciary risks error by elaborating too fully on the Fourth Amendment implications of emerging technology before its role in society has become clear." **City of Ontario, California v. Quon**, 560 U.S. 746, 759, 130 S.Ct. 2619, 177 L.Ed.2d 216 (2010). The Supreme Court was addressing electronic technology in **Quon**, but we believe the concern is equally applicable in the instant matter.

[5] Smith is correct in that Miller acknowledges a person **can** have protectable privacy interest in DNA samples.

In an early case, the Second Circuit held that fingerprinting is a "means for the identification of prisoners so that they may be apprehended in the event of escape, so that second offenders may be detected for purposes of proper sentence where conviction is had, and so that the government may be able to ascertain ... whether the defendant has been previously convicted." *United States v. Kelly*, 55 F.2d 67, 68 (2d Cir. 1932). Acknowledging that "[a]ny restraint of the person may be burdensome," the court held that "[t]he slight interference with the person involved in finger printing seems to us one which must be borne in the common interest." *Id*. The court emphasized that fingerprinting arrestees is for the purpose of *identification:*

> Finger printing seems to be no more than an extension of methods of identification long used in dealing with persons under arrest for real or supposed violations of the criminal laws. It is known to be a very certain means devised by modern science to reach the desired end, and has become especially important in a time when increased population and vast aggregations of people in urban centers have rendered the notoriety of the individual in the community no longer a ready means of identification.

*Id.*; *accord United States v. Krapf*, 285 F.2d 647, 650-51 (3d Cir. 1961) ("[Fingerprinting] is a means of identification which is useful in many circumstances some of which relate to the enforcement of our laws."). The court upheld the booking procedure based on "the general right of the authorities charged with the enforcement of the criminal law to employ finger printing as an appropriate means to identify criminals and detect crime." *Kelly*, 55 F.2d at 70.

Suspicionless fingerprinting of all citizens would violate the Fourth Amendment. *See Hayes v. Florida*, 470 U.S. 811, 813-18, 105 S.Ct. 1643, 84 L.Ed.2d 705 (1985); *Davis v. Mississippi*, 394 U.S. 721, 727, 89 S.Ct. 1394, 22 L.Ed.2d 676 (1969). Nevertheless, it is "elementary" that blanket fingerprinting of individuals who have been lawfully arrested or charged with a crime does not run afoul of the Fourth Amendment. *Smith* [*v. United States*], 324 F.2d [879] at 882 [D.C. Cir. 1963)]. The universal approbation of fingerprinting as a method of identifying arrestees despite the invasion of privacy

"is not surprising when we consider that probable cause had already supplied the basis for bringing the person within the criminal justice system. With the person's loss of liberty upon arrest comes the loss of at least some, if not all, rights to personal privacy otherwise protected by the Fourth Amendment." *Jones* [*v. Murray*], 962 F.2d [302] at 306 [(4th Cir. 1992)]; *see also* [*United States v.*] *Kincade*, 379 F.3d [813] at 864 [(9th Cir. 2004) (*en banc*)] (Reinhardt, J., dissenting) ("Arrestees' privacy interests ... appear to be significantly reduced."). This analysis rests on two foundational principles—the presence of probable cause to arrest and the use of fingerprints as a method of identification:

> [W]hen a suspect is arrested upon probable cause, his identification becomes a matter of legitimate state interest and he can hardly claim privacy in it. We accept this proposition because the identification of suspects is relevant not only to solving the crime for which the suspect is arrested, but also for maintaining a permanent record to solve other past and future crimes.

*Jones*, 962 F.2d at 306. Moreover, we permit such fingerprinting "whether or not the proof of a particular suspect's crime will involve the use of fingerprint identification." *Id.*; *accord Rise* [*v. Oregon*], 59 F.3d [1556] at 1559-60 [(9th Cir. 1995)].

This logic extends to the collection and analysis of DNA samples from arrestees and pretrial detainees. *See Anderson v. Virginia*, 274 Va. 469, 650 S.E.2d 702, 705 (2007) ("A DNA sample of the accused taken upon arrest, while more revealing, is no different in character than acquiring fingerprints upon arrest."). DNA collection occurs only after it has been determined that there is probable cause to believe that the arrestee committed a crime. In light of this probable cause finding, arrestees possess a diminished expectation of privacy in their own identity, which has traditionally justified taking their fingerprints and photographs.

*United States v. Mitchell*, 652 F.3d 387, 410-12 (3rd Cir. 2011)

(footnotes omitted).

We recognize that *Miller*, as a federal decision, is not binding upon us. However, we agree with the reasoning and conclusion that when the prospective DNA sample is being used for identification purposes, the donor of that sample has no more privacy interest in it than in his fingerprints.

We also recognize that as a practical matter, Smith's argument is flawed. As an evidentiary consideration, the blood samples taken from Smith's shoe and shirt were only relevant if they ultimately linked Smith to the crime.[6] That is, the stains were relevant only if they proved to be the Victim's blood, thereby linking Smith to the Victim. However, Smith cannot assert any privacy interest in the Victim's DNA analysis.

Accordingly, in addition to having no protectable privacy interest in DNA samples to be used for identification purposes, he cannot demonstrate a privacy interest in the DNA samples, after they were analyzed, because the relevant DNA was not his.

Smith has provided no case law, nor any logical construct that convinces us that he had a protectable privacy interest in the DNA samples taken from his shirt and shoe prior to their analysis. Smith's general concern that the government might use any DNA sample of his to obtain

---

[6] There may be circumstances where identifying a DNA sample can exonerate a defendant. If Smith believed that to be the case instantly, it is doubtful he would have sought to suppress the analysis. Therefore, we need not address that consideration herein.

private medical information about him is nothing more than speculation. The common understanding of the purpose and use of trace evidence analysis in situations such as this is to determine the identity of the source. As such, the government does not require a warrant to conduct such analysis any more than it needs a warrant to take an arrested person's fingerprints. Unless and until Smith can demonstrate another, impermissible, use of DNA analysis, his argument fails. Therefore, the trial court committed no abuse of discretion or error of law in denying Smith's motion to suppress the DNA analysis.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/31/2017