J-S48040-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JOSE GONZALEZ | : | |
| | : | |
| Appellant | : | No. 2746 EDA 2023 |

Appeal from the Judgment of Sentence Entered October 5, 2023
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0002574-2021

BEFORE:  STABILE, J., NICHOLS, J., and BENDER, P.J.E.

MEMORANDUM BY BENDER, P.J.E.:          **FILED FEBRUARY 27, 2025**

Appellant, Jose Gonzalez, appeals from the October 5, 2023 judgment of sentence of an aggregate term of three years' probation, imposed after he was convicted, following a non-jury trial, of carrying a firearm without a license (18 Pa.C.S. § 6106(a)(1)) and carrying a firearm in public in Philadelphia (18 Pa.C.S. § 6108).  On appeal, Appellant argues that the trial court erred by denying his pretrial motion to suppress the firearm found on his person during a search by police.  After careful review, we affirm.

We glean the following facts from the record of the suppression hearing. On February 11, 2021, Philadelphia Police Officer Ryan McAneney responded to an anonymous call reporting an armed robbery in progress by three Hispanic males who were all wearing black clothing.  Appellant, who matched the description of the robbers, was observed by Officer McAneney in the area of 715 Luzern Street, which was approximately one block away from the

reported robbery. At the suppression hearing, Officer McAneney testified that he has made arrests for "drugs and violence, robberies, [and] thefts [of] stores and cars" in that area. N.T., 10/5/23, at 7. As Officer McAneney was "surveying the area" in his marked police cruiser, he saw Appellant, who matched the description of the robbery suspects, "look[] in [the officer's] direction and immediately [go] into [a] store." *Id.* at 8. The officer parked his car and went into the store and approached Appellant. *Id.* at 9. Officer McAneney testified, "I explained to [Appellant] that he matched the description of a robbery in progress. [Appellant] then stated[, ']I have nothing on me, you can search me.['] I then searched him and found a firearm in his left jacket pocket." *Id.* at 9-10. Officer McAneney stated that, prior to Appellant's saying that he had nothing on him, the officer did not tell Appellant to stop, block him from leaving the store, or "say that he was under arrest or anything to that effect[.]" *Id.* at 11.

Officer McAneney explained that as he was patting Appellant's body, he "felt the gun" and, thus, he handcuffed Appellant "for everyone's safety at that point," and "for further investigation" to discern "if he had a permit or if he was the doer of said robbery." *Id.* at 14. Once the officer removed Appellant from the store, he checked police databases and discovered that Appellant did not have a permit to carry a concealed firearm. *Id.*

On cross-examination, Officer McAneney acknowledged that the video from his body camera shows that after he and Appellant briefly spoke to each other, the officer pointed to a shelf in the aisle of the grocery store, and

Appellant put his hands on that shelf.  *Id.* at 22.  The officer testified that he asked Appellant to put his hands on the shelf "after [Appellant] consented" to the search.  *Id.*  Defense counsel then confronted the officer with the fact that the officer's report of the incident stated that he "asked [Appellant] to place his hands on the shelf and then [Appellant] said, you can search me[.]"  *Id.* at 20.  On redirect examination, Officer McAneney testified that his report was "just a mix up" and Appellant gave his consent to be searched before the officer asked him to place his hands on the shelf.  *Id.* at 22.

At the close of the suppression hearing, the court found that Officer McAneney validly stopped Appellant pursuant to *Terry v. Ohio*, 392 U.S. 1, 30 (1968) (holding that police may initiate a *Terry* stop based upon reasonable suspicion that the seized individual is involved in criminal activity).  *See* N.T. at38.  The court then reasoned:

> THE COURT: Under *Terry*, … the officer would have a right to do an outer pat down if he thought [Appellant] was armed while talking to him.  In this case, he didn't have to.  [Appellant] said, Well, you can search me. … [Appellant] allowed the officer to search him.  The motion to suppress is denied.

*Id.* at 38-39.

Appellant's case immediately proceeded to a non-jury trial, at the close of which he was convicted to the above-stated firearm offenses.  He was sentenced that same day to the term of probation set forth *supra*.  Appellant filed a timely notice of appeal, and he complied with the court's order to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal.  The

court filed a Rule 1925(a) opinion on April 8, 2024. Herein, Appellant states one issue for our review:

> Did not the Commonwealth fail to meet its burden of establishing that the challenged evidence was not obtained in violation of … Appellant's rights, and did not the trial court err in denying Appellant's motion to suppress physical evidence under the Fourth Amendment of the United States Constitution and Article I, Section 8 of the Pennsylvania Constitution where the arresting officer lacked reasonable suspicion to believe that Appellant was engaged in criminal conduct where he was physically stopped and subjected to an investigatory detention merely based upon the receipt of anonymous flash information of a generalized description of suspects in an armed robbery?

Appellant's Brief at 2.

> We begin by recognizing that,

> [a]n appellate court's standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, the appellate court is bound by those findings and may reverse only if the court's legal conclusions are erroneous. Where the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the courts below are subject to plenary review.

***Commonwealth v. Smith***, 164 A.3d 1255, 1257 (Pa. Super. 2017) (cleaned up).

In this case, Appellant contends that the court erred by denying his suppression motion because he was seized by Officer McAneney without reasonable suspicion. He argues that the officer commanded him to place his hands on the store shelf, which amounted to a seizure. Appellant insists that "[a] reasonable person under the circumstances of this case would feel that he was not free to leave, where the police are focusing on him as a result of an anonymous tip[,]" and Officer McAneney "ordered Appellant to place his hands on a shelf in the store so that he could be searched." Appellant's Brief at 14. Appellant maintains that there was no reasonable suspicion to justify his seizure, as it was based only on his matching "an overbroad [and] generalized description" from an anonymous report. *Id.* at 20.

Appellant also challenges Officer McAneney's testimony that Appellant consented to the search **before** being directed to place his hands on the shelf. According to Appellant, the officer's testimony was not corroborated by the video evidence, and was contradicted by the officer's own investigatory report. Moreover, Appellant contends that the court "never determined that the consent was given before the seizure but[,] rather[, the court] decided the motion to suppress based on **Terry**…." *Id.* at 11. He claims that, "[t]hus, by implication the court never credited the officer's testimony that consent was given prior to the seizure." *Id.* at 11-12.

Finally, Appellant concludes that, even if he gave valid consent to be searched, "the officer in this case conducted a search and confiscated a gun without knowing if Appellant had a permit to carry, which he only learned once

the officer left the store and ran Appellant's information through the squad car's computer, after the search and seizure." *Id.* at 21. Appellant claims that Officer McAneney's seizure of the gun was illegal under *Commonwealth v. Hicks*, 208 A.3d 916 (Pa. 2019), where our Supreme Court stated that there is "no justification for the notion that a police officer may infer criminal activity merely from an individual's possession of a concealed firearm in public." *Id.* at 936. The *Hicks* Court held that possession of a concealed firearm "alone is an insufficient basis for reasonable suspicion that criminal activity is afoot." *Id.* at 945.

We begin by addressing whether Appellant consented to the search, and at what point that consent was given. As set forth, *supra*, Officer McAneney testified that when he entered the store, he briefly spoke to Appellant. The officer testified that he told Appellant he "match[ed] the flash for a radio call[,]" to which Appellant responded, "I have nothing on me, you can search me if you want." N.T. at 11. The officer then asked Appellant to place his hands on the store shelf and frisked him. *Id.* at 19.

This Court has watched the video from Officer McAneney's body camera. It shows that the officer and Appellant briefly spoke to one another, and then the officer motioned for Appellant to put his hands on the shelf. Because there is no audio for that part of the video, it does not directly corroborate the officer's testimony that Appellant gave consent to the search before he was asked to place his hands on the self. However, the video does corroborate the officer's testimony that words were exchanged before Appellant placed his

hands on the shelf. Moreover, nothing in the video disproves the officer's claim that Appellant gave consent during that exchange, or indicates that the officer used any force when he simply indicated for Appellant to place his hands on the shelf. Although Officer McAneney wrote in his report that Appellant consented after his hands were on the store shelf, Officer McAneney testified that his report was simply a 'mix up' and Appellant consented to be searched before the officer asked him to place his hands on the shelf.

Accordingly, Officer McAneney's testimony, if credited, establishes that Appellant consented to be searched before the officer asked him to place his hands on the store shelf. Notably, Appellant does not argue that he was seized by Officer McAneney **before** being asked to put his hands on the shelf, or that any consent he provided before that point was coerced or involuntary. Thus, if the court credited Officer McAneney's testimony, then Appellant's consent was valid and the search of his person was legal. *See Commonwealth v. Strickler*, 757 A.2d 884, 888 (Pa. 2000) ("A search conducted without a warrant is deemed to be unreasonable and therefore constitutionally impermissible, unless an established exception applies. One such exception is consent, voluntarily given. The central Fourth Amendment inquiries in consent cases entail assessment of the constitutional validity of the citizen/police encounter giving rise to the consent; and, ultimately, the voluntariness of consent.") (internal citation omitted).

Appellant argues that the trial court made no credibility determination regarding Officer McAneney's testimony about his consent. However, the

record belies Appellant's claim. For instance, when setting forth its findings of fact at the close of the suppression hearing, the court stated:

> THE COURT: The officer said, you match the flash, and **[Appellant] said, [″]I have nothing on me, you can search me.[″]  Officer said, [″]Well, okay, put your hands up.[″]** That's plausible too. The body-worn cam doesn't say. At this point I don't know if there's anything contradicting what the officer said.

N.T. at 37 (emphasis added). This indicates that the court believed that Appellant gave consent to search first, and then Officer McAneney told him to put his hands on the shelf. **See also** Trial Court Opinion (TCO), 4/8/24, at 3 (stating, in setting forth the facts, that "Officer McAneney asked to search … Appellant, who consented.  The [o]fficer proceeded to search … Appellant and found a firearm in Appellant's left jacket pocket after … Appellant stated that he had nothing on him.").

Additionally, after the court recessed the hearing and then returned to make its ruling, it stated:

> THE COURT: … Under **Terry**, which is still good law, the officer would have a right to do an outer pat down if he thought [Appellant] was armed while talking to him. In this case, he didn't have to. **[Appellant] said, [″]Well, you can search me.[″]**

N.T. at 38 (emphasis added). **See also** TCO at 5 ("Officer McAneney's search was knowing, **consensual**, and voluntary and not coerced.") (emphasis added). This statement by the court bolsters our determination that it credited Officer McAneney's testimony that Appellant consented to the search.

In arguing that the court did not make any credibility determinations regarding Officer McAneney's testimony about his consent, Appellant isolates

*one statement* by the court in response to a motion to recuse that was made by Appellant *after* the suppression motion was denied. *See* Appellant's Brief at 12 ("[B]y implication the court never credited the officer's testimony that consent was given prior to the seizure. This is made abundantly clear when the court was asked to recuse itself after the motion to suppress was denied [and] the *court said, 'No, I didn't make any credibility determinations and I heard the officer[.']"*) (quoting N.T. at 40) (emphasis added). Not only does Appellant wholly ignore the above-quoted statements by the court in rendering its decision on the suppression motion, but his argument is also weakened by the full context of the court's statements after Appellant's motion for recusal:

> [Defense Counsel]: I would make a motion for recusal.
>
> THE COURT: No. I didn't make any credibility determinations and I heard the officer. As a Judge, I can split myself in half and hear the motion to suppress as well as a trial.
>
> [Defense Counsel]: I think we still need a ruling on any statements that were made [by Appellant during the incident,] as well.
>
> THE COURT: Oh, I don't believe he was in custody. I believe it was an encounter at that point. I don't believe those are custodial statements. This was not a situation where the officer put him in handcuffs and detained him and he said, ["]Oh, I have a gun.["] I don't think so. *I believe [Appellant] gave consent.* So there were no statements that were given in violation of his fifth amendment rights.
>
> [Defense Counsel]: Understood. I do think a credibility determination was made though[,] if you are saying you do think he gave consent.
>
> THE COURT: If I rule against one party or the other, it doesn't mean it's on credibility. It means the evidence was what it was. I hear you, [defense counsel]. I'm not saying the officer is a liar,

but that doesn't mean something couldn't come in at trial that could make me change my mind.

N.T. at 39-41 (emphasis added).

Admittedly, the court's statements are somewhat confusing. However, considering the court's comments both in this portion of the record, and when the court was ruling on Appellant's suppression motion, we are convinced that the court credited Officer McAneney's testimony that Appellant gave consent to be searched before the officer asked him to place his hands on the store shelf. The court's confusing remarks at the close of the hearing simply seem to be an attempt to placate defense counsel and clarify that it could impartially preside over Appellant's non-jury trial, even though it credited the officer's testimony in denying his suppression motion.

In sum, we conclude that the trial court found credible Officer McAneney's testimony that Appellant consented to the search of his person before the officer asked him to place his hands on the store shelf. The record supports the court's determination. Again, Appellant makes no argument that he was unlawfully seized prior to being asked to place his hands on the store shelf, or that his consent was coerced or involuntary before that point. Accordingly, we conclude that the court did not err in deeming the consensual search of Appellant's person legal.[1]

_____

[1] To the extent the trial court denied Appellant's motion to suppress on the basis that his stop and frisk was lawful under **Terry**, this Court is permitted to affirm the trial court "on any valid basis, as long as the court came to the correct result...." **Wilson v. Transport Ins. Co.**, 889 A.2d 563, 577 n.4 (Pa. Super. 2005) (citations omitted).

Finally, we address Appellant's argument that his detention after the gun was found was illegal under **Hicks**. "[T]he Commonwealth notes that [Appellant] never raised this issue at the suppression hearing before the trial court." Commonwealth's Brief at 11. Our review of the record confirms that Appellant's argument under **Hicks** was not raised below. **See** N.T. at 26-32. Accordingly, we agree with the Commonwealth that Appellant's claim is waived. **See** Pa.R.A.P. 302(a) ("Issues not raised in the trial court are waived and cannot be raised for the first time on appeal.").

In any event, even if not waived, we would conclude that Appellant's claim is meritless. First, Officer McAneney frisked Appellant because Appellant validly consented to be searched. When that frisk revealed a firearm in Appellant's pocket, Officer McAneney removed the gun "for everyone's safety…." N.T. at 14. "There is no doubt [that] a firearm can be used to harm a police officer … whether it is legally possessed or not." **Commonwealth v. Hawkins-Davenport**, 319 A.3d 537, 547 (Pa. Super. 2024), *appeal granted*, No. 246 EAL 2024, 2025 WL 260025 (Pa. Jan. 22, 2025). Moreover, because Appellant matched the description of individuals who, just minutes before, had committed an armed robbery one block away, the officer was clearly reasonable in seizing the gun as a valid safety precaution for himself and other bystanders inside the store. Thus, Officer McAneney did not need further justification for removing the gun from Appellant's possession to briefly investigate "if he had a permit or if he was the doer of said robbery." **Id. See also Hawkins-Davenport**, 319 A.3d at 547 (holding that an officer does not

require "any additional justification or cause to support the removal of firearm beyond the fact that he was removing the firearm for the precautionary purpose of officer safety[,] … regardless of the possessor's licensure status").

Additionally, Appellant's reliance on **Hicks** is misplaced, as that case is factually distinguishable. There, police detained and searched Hicks and his vehicle based **only** on information that Hicks possessed a firearm. **See Hicks**, 208 A.3d at 922. As stated *supra*, the **Hicks** Court held that an officer may not infer criminal activity solely from a person's possession of a concealed firearm in public. **Id.** at 936. However, the Court also stressed that its analysis was "confined to the antecedent justification for a 'stop,'" and it offered "no opinion as to whether a police officer who has effectuated a lawful investigative detention may treat the suspect's possession of a firearm as *per se* authorization to 'frisk' the detainee." **Id.** at 934.

Instantly, unlike in **Hicks**, Appellant was not detained solely because he possessed a concealed firearm. Instead, Officer McAneney frisked Appellant because Appellant validly consented to be searched. Appellant was then detained because he was carrying that concealed weapon, and also "because [Appellant had] lied about his possession of [the] firearm and was a suspect in the recently reported gun-point robbery as well." Commonwealth's Brief at 12. Given these facts, **Hicks** is not on point and, even if Appellant had not waived this challenge to the seizure of the gun, we would deem it meritless.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 2/27/2025