J-A25038-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| CHAD RANNELS | : | |
| | : | |
| Appellant | : | No. 2389 EDA 2024 |

Appeal from the Judgment of Sentence Entered February 27, 2024
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0002281-2012

BEFORE: LAZARUS, P.J., BOWES, J., and FORD ELLIOTT, P.J.E.[*]

MEMORANDUM BY FORD ELLIOTT, P.J.E.: **FILED MAY 20, 2026**

Chad Rannels appeals the judgment of sentence imposed by the Court of Common Pleas of Philadelphia County following a jury convicting him of, *inter alia*, first degree murder.[1] Rannels raises various challenges relating to the court's denial of his motion to suppress DNA and cellular data. Specifically, Rannels contests: (1) the admission of remote testimony at the suppression hearing; (2) the court's failure to enter findings of fact and conclusions of law after that suppression hearing; (3) the merits of the denial of the motion to suppress; and (4) an alleged non-waivable conflict of interest and failure to recuse on the part of the suppression court. Rannels has also filed an

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] ***See*** 18 Pa.C.S. § 2502(a).

application for remand with this Court based on alleged after-discovered evidence. We affirm and deny Rannels's application for remand.

The trial court set forth the facts underlying the murder in this case as follows:

> In the early morning hours of July 30, 2011, the defendant, Chad Rannels, shot and killed Kristin Shaquille Freeman on the 100 block of East Garfield Street in Philadelphia. At approximately 1:45 a.m., [Freeman] was shopping with his mother, Angela Hardy, at a [local] store by the intersection of Germantown Avenue and Garfield Street. [Freeman] left the store to go to his car, a Pontiac Grand Prix, while [Hardy] walked down the street in the opposite direction towards her mother's house. As [Freeman] approached the corner of Garfield and Wakefield Streets, a GMC Yukon pulled out in front of him and [Rannels], along with two other men, all three of them carrying firearms, jumped out and fired thirteen shots at [Freeman].
>
> Hardy was speaking to neighbors outside her mother's house when she heard gunshots and was informed by a bystander that her son's car was targeted. Hardy ran towards the shooting and identified her son's car at the scene of the shooting. [Freeman]'s cause of death was two gunshot wounds to the head. The medical examiner found evidence of seven total gunshot wounds, including two to the head, one to the left arm, one to the abdomen, one to each thigh, and one to his right forearm.
>
> A search warrant for the GMC Yukon was executed on July 30, 2011, at which time detectives recovered[, *inter alia*,] a rental agreement under the name John Fisher[. Moreover, Rannels]'s fingerprints were found inside the car and on a 9 mm firearm recovered at the crime scene. Fisher testified that his boss rented the car and bought the tickets as a gift to her employees for good performance. Fisher was in possession of the Yukon on Wednesday, July 27, 2011, and he rented the car to [Rannels] in exchange for crack cocaine on July 29, 2011. On August 1, 2011, Fisher was interviewed by Detectives Gregory Santamala and Thomas Gaul, both members of the Philadelphia Police Department. On that same day, Detective Gaul sent an exigent circumstances request for [Rannels]'s phone records to his wireless carrier and received a response on the same day. On

August 3, 2011, Detective Gaul obtained a search warrant for [Rannels]'s cell phone records. Following the interview with [] Fisher and using [Rannels]'s cell phone records, detectives located [Rannels] and brought him in for questioning. During his August 8, 2011 interrogation, [Rannels] signed a consent form and provided a DNA sample. Testing confirmed that the DNA found o[n] the firearm matched the DNA sample taken from [Rannels].

Trial Court Opinion, 1/3/25, at 4-5 (citations and unnecessary capitalization omitted).

This case has a complex procedural history, which the trial court accurately set forth as follows:

On September 23, 2011, [Rannels] was arrested and charged with murder and related offenses. The tortured procedural history of this case includes multiple transfers to different judges and representation over the previous thirteen years.

Gary Silver, Esq[uire] represented [Rannels] at his preliminary hearing on February 21, 2012, at which point [Rannels] was held for court on all charges. On April 10, 2012, Joseph Scott O'Keefe, Esq[uire] was appointed to represent [Rannels]. On April 12, 2012, [Rannels] filed an omnibus pre-trial motion, which included motions to suppress statements made by [Rannels], physical evidence taken from [Rannels], and identification of [Rannels]. On May 3, 2012, new counsel entered his appearance to represent [Rannels].

On May 29, 2013, [Rannels] filed a motion to suppress his statements made to homicide detectives, which was granted by the trial court on June 4, 2013. Following an interlocutory appeal, the order was affirmed and a petition for allowance of appeal with the Supreme Court of Pennsylvania was denied on January 14, 2015.

On May 26, 2016, [Rannels] filed a motion to suppress his DNA, and on June 28, 2016, he filed a motion to suppress cell phone and cell tower records based on a four-corners challenge to the sufficiency of the search warrant. On October 3, 2016, the trial court denied [Rannels]'s motion related to the cell phone and cell tower records, but did not rule on the DNA evidence. On October

11, 2016, a jury found [Rannels] guilty o[f] one firearm charge and was hung on all other charges, resulting in a mistrial.

On June 25, 2018, and July 12, 2018, [Rannels] filed additional motions to suppress his cell phone records and his DNA, respectively, which the trial court denied on March 28, 2019. On April 12, 2019, the jury returned a verdict of guilty on all remaining charges. On that same date, the trial court sentenced [Rannels] to life imprisonment without the possibility of parole on both first[-]degree murder and conspiracy to commit first degree murder. No further penalty was imposed on the other charges.

On April 22, 2019, [Rannels] timely filed a post-sentence motion, which the trial court denied on October 3, 2019. On October 20, 2021, the Superior Court vacated [Rannels]'s judgment of sentence and remanded the case for a new suppression hearing. On April 22, 2022, the suppression court appointed new counsel to represent [Rannels] for a hearing. On April 10, 2023, the Honorable Judge Charles Ehrlich granted [Rannels]'s counseled oral motion for court recusal and on April 13, 2023, the case was transferred by agreement between [Rannels] and the Commonwealth to the Honorable Judge O'Keefe.

On February 27, 2024, after a suppression hearing, Judge O'Keefe denied [Rannels]'s motion to suppress, vacated his previous sentence, and resentenced him to life imprisonment on the charge of murder and a concurrent twenty to forty years of imprisonment for conspiracy to commit first degree murder.

On March 13, 2024, [Rannels] filed a *pro se* motion for recusal based on Judge O'Keefe's prior representation of [Rannels]. On March 25, 2024, counsel was appointed to represent [Rannels,] and he filed a *nunc pro tunc* motion to reinstate his right to file post-sentence motions, which Judge O'Keefe granted the next day. On March 28, 2024, [Rannels] filed a post-sentence motion for reconsideration of sentence and renewed his motion for recusal. Judge O'Keefe recused himself on May 30, 2024, and the case was transferred to [the Honorable Judge Barbara A. McDermott].

Following a **Grazier**[2] hearing on August 13, 2024, th[e trial] court permitted [Rannels] to proceed *pro se*. On that same date,

_____

2 **See Commonwealth v. Grazier**, 713 A.2d 81 (Pa. 1998).

after a hearing, th[e trial] court denied [Rannels]'s motions for reconsideration of sentence and rehearing of his suppression motion. On August 19, 2024, new counsel entered his appearance on behalf of [Rannels].

On August 29, 2024, [Rannels] filed a notice of appeal to the Superior Court of Pennsylvania. On September 9, 2024, th[e trial] court ordered [Rannels] to file a statement of matters complained of on appeal pursuant to [Pennsylvania Rule of Appellate Procedure] 1925(b). [Rannels] filed [several] motions for extension of time[,] each of which was granted. [. . .] On November 11, 2024, [Rannels complied with the Rule 1925 order.]

Trial Court Opinion, 1/3/25, at 1-3 (footnotes and unnecessary capitalization omitted).

On appeal, Rannels presents the following issues for our review:

1. Whether the court erred by allowing retired homicide detective Gregory Santamala to testify remotely at [Rannels's] evidentiary hearing in violation of [Rannels's] Article I, §§ 1 and 9 [of the Pennsylvania Constitution] and the 5th, 6th, and 14th Amendments to the United States Constitution[], along with statutory and procedural rights?

2. Whether the court erred when it failed to include any findings of fact and conclusions of law at the end of the motion to suppress in violation of [Pennsylvania Rule of Criminal Procedure] 581(I)?

3. Whether the court erred by denying [Rannels's] motion to suppress in violation of the 4th, 5th, 6th, and 14th Amendments to the Constitution of the United States and the greater protections of Article I, §§ 1, 8, and 9 of the Constitution of the Commonwealth of Pennsylvania insofar as:

   a. The court failed to suppress physical evidence of the DNA swab collected from [Rannels] and forensic test results despite the following:

      i. [Rannels's] consent was the tainted product of— and was taken during—an illegal detention beginning on August 8th, 2011[,] and ending August 9th, 2011;

- 5 -

    ii. [Rannels's] consent was the direct product of a ***Miranda***[3] violation and therefore should have been suppressed as the fruit of the poisonous tree and/or as a direct violation of his ***Miranda*** rights;

    iii. [Rannels's] consent was not truly voluntary and was not the product of free and unconstrained choice—rather, it was the product of an overborne will; and

    iv. [Rannels's] consent was given in violation of his right to counsel because it was given after he was questioned about whether he would agree to consent to DNA testing without an attorney present.

b. The court failed to suppress and/or preclude the use of GPS phone location collected from [Rannels's] cell phone despite the following:

    i. The police seizure of [Rannels's] initial cell phone records was illegal because they were seized pursuant to an exigent circumstances subpoena—as opposed to a search warrant—that was based on deliberate falsehoods and/or misleading facts and/or omissions in the exigent circumstances request; and

    ii. The information obtained from this illegal exigent circumstances subpoena tainted the subsequent search.

4. Whether the court erred in allowing the Honorable Scott O'Keefe preside over the matter despite Judge O'Keefe acting as [Rannels's] attorney of record in the instant matter prior to becoming a judge thus having a non-waivable conflict and [whether the case] should be remanded for a *de novo* hearing on the merits of the motion to suppress by another duly elected judge?

Appellant's Brief at 10-12 (unnecessary capitalization omitted).

_____

[3] ***See Miranda v. Arizona***, 384 U.S. 436 (1966).

In his first issue, Rannels argues that the suppression court erred in admitting the remote testimony of Detective Santamala because there were allegedly no compelling reasons for doing so instead of requiring in-person testimony. *See* Appellant's Brief at 22-29. Rannels asserts that Detective Santamala's remote testimony violated Rannels's rights under Article I, Sections 1 and 9 of the Pennsylvania Constitution and the 5th, 6th, and 14th Amendments to the United States Constitution. *See id.* at 22-23. Rannels claims that he was entitled to in-person testimony and face-to-face confrontation of Detective Santamala. *See id.* at 28-29. We find the issue is waived.

Pennsylvania law is clear that a timely contemporaneous and specific objection is necessary to properly preserve a challenge to the admission of evidence. *See Commonwealth v. Spone*, 305 A.3d 602, 612 (Pa. Super. 2023) ("With respect to preserving challenges to the admission or exclusion of evidence, [Pennsylvania Rule of Evidence] 103 addresses rulings on evidence and requires a contemporaneous objection in order to preserve a claim of error in the admission of evidence[.]"). According to this preservation requirement, Rannels's first claim is waived.

Here, although counsel initially objected to Detective Santamala's remote testimony at a status listing conference, *see* N.T. Status Listing, 12/6/23, 5-6, counsel later abandoned that challenge when assenting to the later-given suppression testimony without further objection. When asked by the court if there was a problem with the remote nature of Detective

Santamala's testimony, defense counsel expressly declined to object, opting instead for judicial deference. *See* N.T. Suppression Hearing, 2/27/24, at 4-5 ("No, Judge, not to seem insensitive, obviously our stronger preference would be to have [Detective Santamala] here in person. We will defer, of course, to the [c]ourt and the [c]ourt's ruling."). Counsel's abandonment of the objection at the suppression hearing waived the issue for our review. *See Commonwealth v. Colon*, 846 A.2d 747, 752-53 (Pa. Super. 2004) (concluding that issue waived where counsel objected but then acceded to trial court's ruling and did not place objection on record when testimony was offered).

In his second issue on appeal, Rannels argues that Judge O'Keefe erred in failing to make specific findings of fact and conclusions of law at the suppression hearing, in violation of the mandate of Pennsylvania Rule of Criminal Procedure 581(I). *See* Appellant's Brief, at 29-31. Rannels asserts that his appeal depends on Judge O'Keefe's rulings on the findings of fact and conclusions of law, which were never indicated on the record, and these omissions placed Judge McDermott in the allegedly impossible position of writing an opinion in support of Judge O'Keefe's rulings relating to a hearing in which she did not participate. *Id.* at 31. Rannels seeks a remand for a new suppression hearing and the entry of findings of fact and conclusions of law. We find no relief is due.

After our review, we find, yet again, the issue is waived due to Rannels's failure to lodge a timely objection in the trial court at the time that the court

failed to make the now-requested findings. **See** Pa.R.A.P. 302(a) ("Issues not raised in the trial court are waived and cannot be raised for the first time on appeal."); **see also Commonwealth v. Melendez-Rodriguez**, 856 A.2d 1278, 1288 (Pa. Super. 2004) (*en banc*) (noting that "A party cannot rectify the failure to preserve an issue by proffering it in response to a Rule 1925(b) order.") (citation omitted). Indeed, this Court relatively recently found waiver under the same circumstances—where the issue was not properly preserved in the trial court—and we find the same waiver rule is applicable here. **See Commonwealth v. Grimes**, 2024 WL 4602822, at *7 (Pa. Super., filed Oct. 29, 2024) (unpublished memorandum decision)[4]; **see also Commonwealth v. Millner**, 888 A.2d 680, 688 (Pa. 2005) (finding arguable waiver where issue not preserved in trial court).[5]

In his third issue on appeal, Rannels challenges the denial of his motion to suppress the DNA swab and cellular data. We consider those claims together albeit in reverse order.

_____

[4] **See** Pa.R.A.P. 126(b) (noting that Superior Court unpublished memorandum decisions filed after May 1, 2019, may be cited for their persuasive value).

[5] Even if not waived, we would find the issue is meritless because our review is not materially impeded by the omission of such findings and conclusions. **See e.g., Millner**, 888 A.2d at 685 ("When the suppression court's specific factual findings are unannounced, or there is a gap in the findings, the appellate court should consider only the evidence of the prevailing suppression party (here, [the Commonwealth]) and the evidence of the other party (here, [Rannels]) that, when read in the context of the entire record, remains uncontradicted."); **see also Commonwealth v. Rivera**, 311 A.3d 1160, 1162 n.2 (Pa. Super. 2024).

First, as to Rannels's claim that the trial court wrongly denied suppression of the cellular data and records, Rannels argues that the exigent circumstances subpoena, relied upon by police to acquire his name, failed to specify a legitimate imminent danger of death or physical injury necessary to circumvent the probable cause and particularity requirements for a valid search warrant. *See* Appellant's Brief, at 47. Rannels alleges that the only exigency of record consisted of testimony of non-particularized or hypothetical harm, and police were unaware as to whose telephone number police sought and whether that number was connected to the shooter. *See id.* at 52-53. Also, Rannels complains that the exigent circumstances subpoena was completed a day before Detective Santamala interviewed Fisher, and there was nothing in the record to connect Rannels to the homicide until Fisher's interview. *See id.* at 51-52. On this point, Rannels alleges there was police misconduct insofar as the only information available to Detective Gaul at the time he submitted the subpoena was a telephone number and the nickname of the person to whom Fisher rented his car, "which alone was not enough to issue a search warrant based on probable cause, which is why the officers initially used exigent circumstances to compel [the cellular telephone carrier to provide information]." *Id.* at 56. Moreover, Rannels asserts that the name obtained from that subpoena tainted the subsequent search warrant for his telephone records, subjecting those records to the exclusionary rule, as fruit of the poisonous tree. *See id.* at 54-55. Rannels urges that the fruit of the poisonous tree doctrine is applicable because Detective Gaul only allegedly

- 10 -

learned of Rannels's name and was able to confirm he rented the vehicle left at the scene because of the subscriber information derived from the allegedly improper exigent circumstances subpoena. *See id.* at 56. Rannels concludes that Detective Gaul was only able to establish probable cause because of the name provided by the telephone carrier in connection with the exigent circumstances subpoena. *See id.* at 57. Rannels requests that we find that the court should have suppressed all telephone records. *See id.*

Second, as to the DNA swab, Rannels asserts that, although he consented to the swab, that consent was improperly tainted as being the product of his illegal detention. *See* Appellant's Brief at 32. Rannels asserts that he was custodially detained when he consented to the DNA swab, thereby requiring *Miranda* warnings, which were never provided. *See id.* at 33. Rannels complains that he only signed the consent form: (1) at 5:39 a.m. the day after being brought to the homicide unit in handcuffs; (2) after being held alone in a windowless interrogation room overnight; and (3) after an hour of police questioning that began at about 4:45 a.m. *See id.* at 34. Rannels maintains that he was not free to leave the homicide unit because he was physically locked-in, handcuffed, had his telephone confiscated, and was transported there by police. *See id.* at 35. Rannels cites to ***Commonwealth v. Sierra***, 723 A.2d 644 (Pa. 1999), and alleges that the temporal proximity of the illegal detention "played an undeniable role" in Rannels's consent. ***Id.*** at 37. As to ***Miranda***, Rannels claims that he was subjected to a custodial interrogation thereby requiring warnings, noting that as far back as 2013 at a

motion to suppress hearing, the court held that Rannels's **Miranda** rights attached upon Detective Santamala becoming suspicious of his involvement in the homicide and where his allegedly tainted consent was given after those **Miranda** rights attached. **See id.** at 40. Further, Rannels claims that his consent was the product of an "overborne will" where his consent was involuntary. **See id.** at 41. Specifically, Rannels maintains his consent was involuntary because he was

> forced to wait nine [] hours in a locked room without any windows prior to giving consent. He was tired, stuck in an uncomfortable space, and had no means to leave. Additionally, Det[ective] Santamala never **Mirandized** [] Rannels, meaning that [Rannels] was not advised on his right to remain silent nor his right to an attorney. Because he did not know his rights, there was no way for [] Rannels to know he was entitled to request an attorney and remain silent during the interrogation.

**Id.** at 42. Moreover, Rannels complains that due to Detective Santamala's alleged failure to follow procedures for documenting his interview, there is no way for the court to assess the factual circumstances of the interrogation, including potential threats against Rannels that would affect his consent. **See id.** at 43. Rannels states that without the necessary empirical evidence, the Commonwealth is unable to meet its burden to prove Rannels's consent was voluntary, citing **Commonwealth v. Watts**, 465 A.2d 1288 (Pa. Super. 1983). Also, Rannels asserts that his consent was given in violation of his right to counsel under the Sixth Amendment to the United States Constitution. **See** Appellant's Brief, at 44. Specifically, Rannels claims that "his continued conversations with Det[ective] Santamala cannot be considered a waiver of

- 12 -

his rights because he was not put on notice that his *Miranda* rights had indeed attached. Had [] Rannels been informed of his rights, he would have invoked them," to have his attorney present at the interrogation. *Id.* at 45. Rannels alleges that an attorney at the interrogation representing his interests would have advised him not to answer incriminating questions and advised that, unless he consented to the DNA swab, the police would have had to obtain a search warrant supported by probable cause to obtain the DNA. *See id.* Similarly, Rannels claims that, had counsel been present, he would not have answered incriminating questions, and it is unlikely that the police would have been able to establish probable cause to issue a search warrant for his DNA. *See id.* at 46. We conclude no relief is due.

Judge McDermott rejected Rannels's claim for relief as to both the cellular records and the DNA swab as follows:

> Fisher had already provided the detectives with [Rannels]'s phone number, identified him by photograph, and linked [Rannels] to the vehicle that was found at the scene of the shooting. The information obtained from the exigent circumstances [subpoena] was corroborative but unnecessary in pursuing the search warrant for [Rannels]'s cell phone records.
>
> Additionally, with the information provided by Fisher on August 1, 2011, along with the discovery of [Rannels]'s fingerprints on the vehicle and the murder weapon, which was found inside the vehicle, the police had enough probable cause to get a search warrant for [Rannels]'s DNA irrespective of his consent or any statements he made on August 9, 2011. Accordingly, [Rannels]'s suppression motions would have both been denied based on inevitable discovery even absent Detective Santamala's video testimony.

Trial Court Opinion, 1/3/25, at 9 (citations omitted).

Our standard of review for a challenge to the denial of a suppression motion is well settled:

> An appellate court's standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, the appellate court is bound by those findings and may reverse only if the court's legal conclusions are erroneous. Where the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the courts below are subject to plenary review.

*Commonwealth v. Smith*, 164 A.3d 1255, 1257 (Pa. Super. 2017) (brackets and ellipsis omitted). Further, "when reviewing a motion to suppress evidence, we may not look beyond the suppression record." *Id.* "At a suppression hearing, the Commonwealth has the burden of establishing by a preponderance of the evidence that the evidence was properly obtained." *Commonwealth v. Galendez*, 27 A.3d 1042, 1045 (Pa. Super. 2011) (*en banc*) (citation, quotation marks, and brackets omitted).

Both the United States and Pennsylvania Constitutions protect citizens from unreasonable police searches and seizures and search warrants are generally required, except under certain circumstances. ***See***

***Commonwealth v. Simonson***, 148 A.3d 792, 797 (Pa. Super. 2016). To be valid, a search warrant must be supported by probable cause as follows:

> In order to secure a valid search warrant, an affiant must provide a magistrate with information sufficient to persuade a reasonable person that there is probable cause for a search. Probable cause exists where the facts and circumstances within the affiant's knowledge and of which he has reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution in the belief that a search should be conducted. When considering whether probable cause exists, we consider the totality of the circumstances.

***Commonwealth v. Adorno***, 291 A.3d 412, 415 (Pa. Super. 2023) (citations and quotation marks omitted). As an example of an exception to the warrant requirement, evidence need not be suppressed where the Commonwealth proves "by a preponderance of the evidence that the illegally obtained evidence ultimately or inevitably would have been discovered by lawful means." ***Commonwealth v. Metz***, 332 A.3d 92, 102 (Pa. Super. 2025) (citation, quotation marks, and brackets omitted). However, "the inevitable discovery doctrine is not a substitute for the warrant requirement. Police must demonstrate that the evidence **would** have been discovered absent the police misconduct, not simply that they somehow **could** have lawfully discovered it." ***Commonwealth v. Perel***, 107 A.3d 185, 196 (Pa. Super. 2014) (emphasis in original).

In connection with Rannels's argument regarding ***Miranda*** warnings, we observe that such warnings are only required under certain circumstances, as follows:

> *Miranda* warnings are required where a suspect is subject to custodial interrogation. Custodial interrogation has been defined as questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his or her freedom of action in any significant way. Interrogation occurs where the police should know that their words or actions are reasonably likely to elicit an incriminating response from the suspect. An inculpatory statement which is not made in response to police interrogation, then, is classified as a volunteered statement, gratuitous and not subject to suppression for lack of warnings.

*Commonwealth v. Ingram*, 814 A.2d 264, 271 (Pa. Super. 2002).

(citations, quotation marks, and brackets omitted).

As to the issue of Rannels's consent to the DNA swab, consent is considered under the totality of the circumstances. *See Metz*, 332 A.3d at 102. Mere acquiescence in an order or request of the police to conduct a search can never be equated with consent. *See Commonwealth v. Benitez*, 218 A.3d 460, 484 (Pa. Super. 2019).

In connection with Rannels's Sixth Amendment claims, we have summarized that right to counsel as follows:

> The Sixth Amendment provides that "in all criminal prosecutions, the accused shall enjoy the right to have the Assistance of Counsel for his defence." The purpose of this right is to protect the unaided layman at critical confrontations with his expert adversary, the government, after the adverse positions of government and defendant have solidified with respect to a particular alleged crime. Thus, the Sixth Amendment right to counsel attaches only at or after the initiation of adversary judicial proceedings against the defendant. Because it does not attach until a prosecution is commenced, the Sixth Amendment right to counsel is offense-specific: It cannot be invoked once for all future prosecutions.

> In addition, the Sixth Amendment guarantees the right to representation by counsel not only at trial, but also at earlier, critical stages. After the Sixth Amendment has attached,

- 16 -

government efforts to elicit information from the accused, including interrogation, represent critical stages at which the Sixth Amendment applies. As the United States Supreme Court observed[,] there exists a clear rule[,] that once adversary proceedings have commenced against an individual, he has a right to legal representation when the government interrogates him. If police initiate interrogation after a defendant's assertion of his Sixth Amendment right to counsel, any waiver of the defendant's right to counsel for that police-initiated interrogation is invalid.

*Commonwealth v. Romine*, 682 A.2d 1296, 1299 (Pa. Super. 1996) (*en banc*) (citations, some quotation marks, ellipses, and brackets omitted)

After our review, we discern no abuse of discretion or error of law in the trial court's denial of Rannels's motion to suppress the telephone records and data based on the alleged illegality of the exigent circumstances subpoena. *See Smith*, 164 A.3d at 1257. We agree with the trial court that, even at the time that police submitted the exigent circumstances subpoena, Rannels's name would have been inevitably discovered based on Fisher's ability to provide the police with Rannels's telephone number and because Fisher told police he lent Rannels the vehicle that was left at the scene wherein the murder weapon was also discovered. *See* N.T. Suppression Hearing, 2/27/24, at 16-17; *see also Metz*, 332 A.3d at 102. This factual scenario served as a sufficient basis to warrant a reasonable person to believe that a search of the telephone carrier records relating to the number of the individuals who had permission to drive the vehicle left at the scene should be conducted. We conclude that this factual scenario also amounted to sufficient probable cause to secure a search warrant for Rannels's name. *See Adorno*, 291 A.3d at 415; *see also Galendez*, 27 A.3d at 1045. In any event, Detective Gaul

testified that he submitted a search warrant for the same information as was requested in the exigent circumstances subpoena two days later, based on the same information initially provided by Fisher and which information formed the factual basis for submitting the earlier subpoena. *See* N.T. Suppression Hearing, 2/27/24, at 67-68; *see also Perel*, 107 A.3d at 196. Even if not yet suspected as a perpetrator in the murder, undoubtedly, the known driver(s) and occupant(s) of the vehicle left at the scene were reasonably persons of interest who possessed relevant information in the investigation of Freeman's murder, and a warrant would have been pursued to discover their identity. *See Perel*, 107 A.3d at 196. Accordingly, no relief is due as it relates to the suppression of Rannels's telephone records.

Further, we discern no abuse of discretion or error of law in the trial court's denial of Rannels's motion to suppress the DNA swab. *See Smith*, 164 A.3d at 1257. We conclude that the Commonwealth would have inevitably obtained a search warrant for Rannels's DNA on the same basis as that for obtaining Rannels's name, given that Fisher identified Rannels in connection with the vehicle left at the scene and where DNA evidence was recovered from the scene.[6] *See Metz*, 332 A.3d at 102. We find the Commonwealth satisfied its burden to prove by a preponderance of the evidence that it would have ultimately requested and received a valid warrant for the DNA swab. *See*

---

[6] Rannels had no privacy interest in the DNA recovered from the scene. *See Smith*, 164 A.3d at 1260.

*Galendez*, 27 A.3d at 1045; *see also Adorno*, 291 A.3d at 415. Indeed, Detective Santamala testified that he would have sought a search warrant for Rannels's DNA had Rannels refused to provide it, based on the information provided by Fisher. *See* N.T. Suppression Hearing, 2/27/24, at 16; *see also Perel*, 107 A.3d at 196. As the DNA evidence would have been inevitably discovered via a valid search warrant supported by probable cause, we need not reach Rannels's arguments about illegality in connection with *Miranda*, his allegedly overborne will and involuntary consent, or any alleged violation of the Sixth Amendment. *See, e.g.*, *Commonwealth v. Bailey*, 986 A.2d 860, 863 (Pa. Super. 2009) (applying inevitable discovery doctrine to involuntary consent to search); *see also Ingram*, 814 A.2d at 271-72 (applying inevitable discovery doctrine to confession without *Miranda* warnings); *Nix v. Williams*, 467 U.S. 431 (1984) (applying inevitable discovery doctrine to alleged Sixth Amendment violation). Accordingly, no relief is due on Rannels's challenge to the court's failure to suppress the DNA or cellular telephone records evidence or any claim within his third issue on appeal.

In his fourth issue, Rannels claims that Judge O'Keefe erred in presiding over his suppression hearing because Judge O'Keefe represented Rannels as defense counsel at a prior time in this same criminal case. *See* Appellant's Brief, at 58-59. Nevertheless, this issue is waived due to Rannels's failure to preserve it as he only raised the issue of Judge O'Keefe's presiding over his suppression hearing after Judge O'Keefe issued an adverse ruling on his

suppression claims. *See In re Lokuta*, 11 A.3d 427, 437 (Pa. 2011) (stating that "a party seeking recusal or disqualification must raise that issue at the earliest opportunity or be barred from obtaining appellate review of the question"); *see also Commonwealth v. Blount*, 207 A.3d 925, 932 (Pa. Super. 2019) (holding that defendant failed to preserve recusal claim based on trial judge's refusal to accept parties' negotiated sentence where defendant failed to object or seek recusal at moment judge indicated it would first need to hear all testimony, evidence, and arguments before reaching sentence). Beyond waiver, Rannels consented to the reassignment of his case to Judge O'Keefe. Accordingly, no relief is due on any of Rannels's four issues on appeal.

Rannels has also filed in this Court an application for remand pursuant to Pennsylvania Rule of Criminal Procedure 720(C), due to an alleged *Brady*[7] violation in connection with a document titled "Scene Notes," which the Commonwealth allegedly provided to him for the first time during the litigation of the motion to suppress, after his trial. *See* Application for Remand, 9/9/25. Rannels alleges that none of his previous counsel, nor he, has ever seen that document and that it constitutes after-discovered evidence. *See id.* at 3.

Our Supreme Court has explained that "the test for whether a new trial is warranted on the basis of after-discovered evidence is settled." *Commonwealth v. Castro*, 93 A.3d 818, 825 (Pa. 2014). "[T]he proposed

---

[7] *See Brady v. Maryland*, 373 U.S. 83 (1963).

new evidence must be 'producible and admissible.'" ***Id.*** (citation omitted). Further, timing is key, as "A post-sentence motion for a new trial on the ground of after-discovered evidence must be filed in writing promptly after such discovery." Pa.R.Crim.P. 720(C). The comment to Rule 720(C) further explains that importance of promptly raising a challenge under this rule:

> Unlike ineffective counsel claims, which are the subject of [***Commonwealth v. Grant***, 813 A.2d 726 (Pa. 2002)], paragraph (C) requires that any claim of after-discovered evidence must be raised promptly after its discovery. Accordingly, after-discovered evidence discovered during the post-sentence stage must be raised promptly with the trial judge at the post-sentence stage; after-discovered evidence discovered during the direct appeal process must be raised promptly during the direct appeal process, and should include a request for a remand to the trial judge[.]

***Id.***, cmt.

After our review, Rannels's application for remand fails to satisfy the requirement that he promptly seeks relief where he fails to explain exactly when he learned of the existence of the Scene Notes document and what timely steps he employed to preserve his claim for a new trial based on his discovery of that document. ***See*** Pa.R.Crim.P. 720(C). His application further fails to establish the requirement that the Scene Notes document is producible and admissible evidence. ***See Castro***, 93 A.3d 825. Accordingly, we deny Rannels's application for remand.

Application for remand denied. Judgment of sentence affirmed.

Judgment Entered.

*Benjamin D. Kohler*

Benjamin D. Kohler, Esq.
Prothonotary


Date: <u>5/20/2026</u>